**EXHIBIT A**
Certification

**EXHIBIT B**
Engagement Letter

**EXHIBIT C**
Revised Engagement Letter

**EXHIBIT D**
Employment Application

**EXHIBIT E**
Professionals' Biographies

**EXHIBIT F**
Monthly Fee Statements

**EXHIBIT G**
Summary of Fees Due and Received

**EXHIBIT H**
Summary of Sale Transaction Fee

**EXHIBIT I**
Summary and Itemization of Expenses

**EXHIBIT J**
Final Employment Order

# EXHIBIT A
## Certification

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x

In re:                                                    Chapter 11

M. FABRIKANT & SONS, INC. and                             Case No. 06-12737-(SMB)
FABRIKANT – LEER INTERNATIONAL, LTD.
                                                          (Jointly Administered)

                                    Debtors.

-------------------------------------------------------------- x

## CERTIFICATION OF FINAL APPLICATION OF
## PETER J. SOLOMON COMPANY FOR ALLOWANCE OF
## COMPENSATION AND FOR REIMBURSEMENT
## OF EXPENSES FOR SERVICES RENDERED IN THESE CASES

TO THE HONORABLE STUART M. BERNSTEIN,
UNITED STATES BANKRUPTCY JUDGE:

Pursuant to: (i) the Guidelines for Fees and Disbursements for Professionals in Southern

District of New York Bankruptcy Cases (issued June 20, 1991), (ii) the Administrative Order

with respect to Amended Guideline for Fees and Disbursements for Professionals in Southern

District of New York Bankruptcy Cases (issued April 19, 1995), (iii) the Guidelines for

Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 S.C.

§ 330 adopted by the Executive Office for the United States Trustees on March 22, 1995 and (iv)

the Clarification and Amendment Regarding the Fee Guidelines, adopted by the Executive

Office for United States Trustees, as such Apply to Cases filed in the Judicial Districts of New

York, Connecticut and Vermont – Region 2 issued by the United States Trustee for Region 2 on

May 10, 1995, (collectively, the "Guidelines"), the undersigned, a member of the firm of Peter J.

Solomon Company ("PJSC") hereby certifies with respect to the Final Application of PJSC,

Financial Advisor to the Debtors for Allowance of Compensation and for Reimbursement of

Expenses for Services Rendered in These Cases, for the period November 17, 2006 through May 31, 2007 ( the "Application"), as follows:

A.    Certification

        1.    I am the "Certifying Professional" as defined in the Guidelines. I have read the Application, and certify that to the best of my knowledge, information and belief, formed after reasonable inquiry, except as specifically indicated to the contrary, (a) the Application complies with the Guidelines, (b) the fees and disbursements sought by PJSC for this compensation period fall within the Guidelines, and (c) the fees and disbursements sought by PJSC, except to the extent prohibited by the Guidelines, are billed at rates, and in accordance with practices, customarily employed by PJSC and generally accepted by PJSC's clients.

        2.    PJSC has complied with the Interim Fee Order entered in this case and has provided the Debtors, counsel to the Debtors, counsel to the Official Committee of Unsecured Creditors, counsel to the Lenders, and the United States Trustee with a copy of the Application.

        3.    No agreement or understanding exists between PJSC and any other person for a division of compensation herein, and no agreement prohibited by §504 of the Bankruptcy Code (11 U.S.C. § 504) and Rule 2016 of the Bankruptcy Rules has been made.

B.    Compliance with Specific Guidelines Regarding Time Records

        4.    To the best of my knowledge, information and belief, formed after reasonable inquiry, PJSC has complied with all of the Guidelines and Orders as to the recording of time by PJSC's professionals and paraprofessionals.

C.    Description of Services Rendered

        5.    I certify that the Application sets forth at the outset, in the accompanying summary schedules, as well as in the text of the Application: (a) the amount of fees and disbursements sought, (b) the time period covered by the Application, (c) the total professional

and paraprofessional hours expended; and, further, that the schedules and the exhibits to the Application show (d) the name of each professional and paraprofessional, with his or her position at PJSC, (e) the year that each professional was licensed to practice, where applicable, and (f) the hours worked by each professional and paraprofessional.

D.    Reimbursement for Expenses and Services

6.    In connection with PJSC's request for reimbursement of services and out-of- pocket expenses, I certify to the best of my knowledge, information and belief, formed after a reasonable inquiry that: (a) PJSC has not included in the amounts billed a profit in providing those services for which reimbursement is sought in the Application, (b) PJSC *has not* included in the amounts billed for such services any amounts for amortization of the cost of any investment, equipment or capital outlay (as well as any and all cellular phone and/or Blackberry or other hand held electronic communication device and equipment, and related fees, charges, taxes, etc.) and (c) amounts billed for purchases or services from outside third-party vendors are billed in amounts paid by PJSC to such vendors.

7.    I also certify to the best of my knowledge, information and belief, formed after reasonable inquiry, the amounts requested in the Application for reimbursement of expenses fully comply with the Guidelines.

Dated: April [21], 2008
       New York, New York

                        **PETER J. SOLOMON COMPANY**


                        _____
                        Bradley Dietz
                        Managing Director

3

# EXHIBIT B
## Engagement Letter



520 Madison Avenue
New York, New York 10022

Tel: 212.508.1600
Fax: 212.508.1633
info@pjsolomon.com

August 24, 2006

M. Fabrikant & Sons, Inc.
One Rockefeller Plaza
New York, New York 10020

Attention: Michael Shaffet
Chief Operating Officer

This letter (the "Agreement") will confirm the engagement of Peter J. Solomon Company, L.P. and/or its affiliate Peter J. Solomon Company Limited (collectively "PJSC") by M. Fabrikant & Sons, Inc. as financial advisor in connection with a transaction or series or combination of transactions, whereby, directly or indirectly, (i) M. Fabrikant & Sons, Inc. together with all or certain of its subsidiaries and affiliates (collectively, the "Company") renegotiates and/or restructures its Senior Bank Debt obtaining waivers, amendments and/or forbearances under the Company's bank loan documents as are necessary to prevent a default from arising, or cure any default, under any financial covenants set forth therein for a period of four fiscal quarters, (a "Restructuring Transaction"); (ii) the Company raises capital from any bank, financial institution or other financing source (a "Financing Transaction"); and (iii) control of or a material interest in the assets, business or securities of the Company is acquired by or combined with any person or entity or any of its affiliates (a "Buyer"), including without limitation, through a sale or exchange of capital stock or assets, a merger or consolidation, a tender or exchange offer, a leveraged buy-out, or any other business combination or similar transaction (a "Sale Transaction" and, together with a Restructuring Transaction and Financing Transaction, a "Transaction").

Section 1.    Services to be Rendered.    PJSC will perform such services as the Company may reasonably request including, but not limited to, the following:

(a)    PJSC will familiarize itself to the extent it deems appropriate and feasible with the business, operations, properties, financial condition and prospects of the Company, and, to the extent relevant, any prospective Buyer, it being understood that PJSC shall, in the course of such familiarization, rely entirely upon such information as may be supplied by the Company or other relevant parties, including such Buyer and the Company's counsel, without assuming any responsibility for independent investigation or verification thereof;

(b)    PJSC will assist the Company in the preparation of descriptive information concerning the Company, based upon information provided by the Company, the

reasonableness, accuracy and completeness of which information PJSC will not be required to investigate and about which PJSC will express no opinion;

     (c)     PJSC will review and analyze the business plans and financial projections prepared by the Company;

     (d)     PJSC will evaluate the Company's liquidity needs, potential debt capacity and capitalization based on the Company's projected earnings and cash flows;

     (e)     PJSC will assist the Company with developing various financial models and projections to be used in conjunction with a Transaction;

     (f)     PJSC will assist the Company with developing and presenting various reporting and informational requirements as may be required from time to time by its Senior Bank Debt holders;

     (g)     PJSC will advise and assist the Company in identifying and contacting potential Transaction sponsors;

     (h)     PJSC will assist the Company in conducting presentations and due diligence meetings with prospective Transaction sponsors;

     (i)     PJSC will advise and assist the Company in developing a general strategy for accomplishing a Transaction, as well as its form and structure;

     (j)     PJSC will periodically advise the Company as to the status of dealings with any parties involved in a Transaction and will advise and assist the Company in the course of its negotiations, execution and closing of any Transaction;

     (k)     PJSC will advise and assist management of the Company in making presentations to the Company's Board of Directors concerning general strategy and any proposed Transaction;

     (l)     PJSC will participate as an advisor to the Company in negotiating and implementing a Transaction;

     (m)     PJSC will render such other financial advisory services as may from time to time be agreed upon by PJSC and the Company.

     Section 2.     Information Provided by the Company.     The Company will furnish PJSC with such information as PJSC and the Company agree is appropriate to enable PJSC to render services hereunder (all such information being the "Information"). The Company recognizes and confirms that PJSC (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having assumed any obligation to independently verify the same, (b) does not assume responsibility for the

accuracy or completeness of the Information and such other information, and (c) will not act in the official capacity of an appraiser of any assets of the Company or any other party. The Company confirms that the Information to be furnished by the Company, when delivered, to the best of its knowledge, will be true and correct in all material respects, will be prepared in good faith, and will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not misleading. The Company will promptly notify PJSC if it learns of any material inaccuracy or misstatement in, or material omission from, any Information theretofore delivered to PJSC. Except as required by applicable law, PJSC shall keep confidential all non-public Information and shall not disclose such Information without the Company's prior written approval to any third party, other than in confidence to the Company and its advisors and to such of PJSC's directors, officers, employees, counsel and advisors (whom PJSC shall instruct to maintain the confidentiality of such information in accordance with this Agreement) as PJSC determines to have a need to know in order to render services hereunder.

Section 3.     Fees.   As compensation for the services rendered hereunder, the Company and its successors, if any, agrees to pay PJSC (via wire transfer or other mutually acceptable means) the following fees in cash:

(a)  A monthly fee (the "Monthly Fee") equal to $100,000 per month, with the first Monthly Fee payable in advance upon the execution of this Agreement and such additional Monthly Fees on each monthly anniversary of the date hereof during the term of PJSC's engagement hereunder.

(b)  In the event of a Restructuring Transaction, a transaction fee (the "Restructuring Transaction Fee") in an amount equal to $1,500,000. The Restructuring Transaction Fee shall be payable upon the execution of a restructuring of the Company's Senior Bank Debt and Trade Debt embodying the closing of the Restructuring Transaction.

(c)  In the event of a Financing Transaction, one or more transaction fees (the "Financing Transaction Fee") in an amount equal to the following percentages of the gross proceeds of any Financing:

| If Capital Raised in the Form of | Financing Transaction Fee Percentage |
| --- | --- |
| Senior Secured Debt | 1.00% |
| Debt Junior to the Secured Bank Debt | 3.00% |
| Equity | 5.00% |

New loans or commitments provided by the existing banks will not be subject to a Financing Transaction Fee.

(d)  In the event of a Sale Transaction, a transaction fee (the "Sale Transaction Fee") equal to the applicable percentage, as set forth on Exhibit B hereto, of the Aggregate Consideration (as defined below) paid or payable in connection with a Transaction.

The Sale Transaction Fee shall be contingent upon the consummation of a Sale Transaction and shall be payable at the closing thereof, provided that compensation attributable to that part of Aggregate Consideration which is contingent upon the realization of future financial performance (e.g. an earn-out or similar provision) shall be paid by the Company to PJSC promptly upon the receipt of such Aggregate Consideration by the Company, its shareholders or other parties. Compensation attributable to that part of Aggregate Consideration which is deferred (including without limitation any Aggregate Consideration held in escrow) shall be valued at the total stated amount of such consideration without applying a discount thereto and shall be paid by the Company at the closing of a Sale Transaction.

For purposes hereof, the term "Aggregate Consideration" shall mean the total amount of all cash, securities, contractual arrangements (including any lease arrangements or put or call agreements) and other properties paid or payable, directly or indirectly in connection with a Sale Transaction (including, without limitation, amounts paid (i) pursuant to covenants not to compete, employment contracts, employee benefit plans, management fees or other similar arrangements, and (ii) to holders of any warrants, stock purchase rights or convertible securities of the Company and to holders of any options or stock appreciation rights issued by the Company, whether or not vested). Aggregate Consideration shall also include the amount of any short-term debt and long-term liabilities of the Company (including the principal amount of any indebtedness for borrowed money and capitalized leases and the full amount of any off-balance sheet financings) (x) repaid or retired in connection with or in anticipation of a Sale Transaction or (y) existing on the Company's balance sheet at the time of a Sale Transaction (if such Sale Transaction takes the form of a merger, consolidation or a sale of stock or partnership interests) or assumed in connection with a Sale Transaction (if such Sale Transaction takes the form of a sale of assets). For purposes of calculating the amount of revolving credit debt in the preceding sentence, the arithmetic mean of the amount of revolving credit debt outstanding on the last day of each month during the 12 months preceding the closing of the Sale Transaction will be used. In the event such Sale Transaction takes the form of a sale of assets, Aggregate Consideration shall include (i) the value of any current assets not purchased, minus (ii) the value of any current liabilities not assumed. In the event such Sale Transaction takes the form of a recapitalization, restructuring, spin-off, split-off or similar transaction, Aggregate Consideration shall include the fair market value of (i) the equity securities of the Company retained by the Company's security holders following such Sale Transaction and (ii) any securities received by the Company's security holders in exchange for or in respect of securities of the Company following such Sale Transaction (all securities received by such security holders being deemed to have been paid to such security holders in such Sale Transaction). The value of securities that are freely tradable in an established public market will be determined on the basis of the last market closing price prior to the consummation of a Sale Transaction. The value of securities, lease payments and other consideration that are not freely tradable or have no established public market, or if the consideration utilized consists of property other than securities, the value of such property shall be the fair market value thereof as determined in good faith by PJSC,

provided, however, that all debt securities shall be valued at their stated principal amount without applying a discount thereto.

In addition to the fees provided above, and as more fully set forth in Section 5 below, the Company shall reimburse PJSC for its out-of-pocket expenses and pay to PJSC the customary hourly fees charged by PJSC for each hour that a PJSC employee shall be required to testify (or be available on site to testify) in any court, arbitration or administrative proceedings, or in oral depositions, in connection with any such proceedings relating to or arising out of PJSC's engagement hereunder. However, no payment of hourly fees will be required for testimony regarding a sale of the Company's assets under Section 363 of the United States Bankruptcy Code.

Section 4.    Credit.  PJSC shall credit 100% of up to a maximum of the first six months of fees paid to PJSC under Section 3(a) above toward any fee payable under Sections 3(b), 3(c) and 3(d).

Section 5.    Expenses.    Without in any way reducing or affecting the provisions of Exhibit A hereto, the Company shall reimburse PJSC for its reasonable, out-of-pocket expenses incurred in connection with the provision of services hereunder. Additionally, the Company shall reimburse PJSC for the fees, disbursements and other charges of PJSC's outside counsel. Out-of-pocket expenses also shall include, but not be limited to, overnight travel and lodging, communication charges, research and courier services. The Company shall promptly reimburse PJSC upon presentation of an invoice or other similar documentation; provided, however, that the incurrence of any single out-of-pocket expense or disbursement pursuant hereto of an amount in excess of $2,500 shall be pre-approved by the Company.

Section 6.    Indemnity and Other Rights.  The    Company    agrees    to    the provisions of Exhibit A hereto, which is an integral part of this Agreement and the terms of which are incorporated by reference herein.    Such Exhibit A shall survive any termination, expiration or completion of PJSC's engagement hereunder.

Section 7.    Term.

The term of this Agreement shall extend from the date hereof for a period of two months and shall continue thereafter on a month-to-month basis; provided that (i) either the Company or PJSC may terminate this Agreement upon 30 days notice delivered in writing; (ii) upon termination, PJSC shall be entitled to any fees for any monthly period which are due and owing to PJSC upon the effective date of termination, such amounts to be pro-rated for any incomplete monthly period of service; (iii) termination of PJSC's engagement hereunder shall not affect the Company's continuing obligations under Section 7 and Exhibit A hereof; (iv) PJSC shall be entitled to its full fees under Section 3 hereof in the event that any Transaction is consummated at any time prior to the expiration of one year after such termination, or a letter of intent or definitive agreement with respect to any Transaction is executed at any time prior to one year after such termination (which letter of intent or definitive agreement subsequently results in the

consummation of such Transaction at any time); and (v) termination of PJSC's engagement hereunder shall not affect the Company's obligation to reimburse the expenses accruing prior to such termination to the extent provided for in Section 4.

Section 8.     Miscellaneous.

(a)     The advice (oral or written) rendered by PJSC pursuant to this Agreement is intended solely for the benefit and use of senior management of the Company and the Board in considering the matters to which this Agreement relates, and the Company agrees that such advice may not be relied upon by any other person, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose except as required by law nor shall any public references to PJSC be made by the Company without the prior written consent of PJSC which shall not be unreasonably withheld.

(b)     The Company agrees that PJSC shall have the right after completion of a Transaction, subject to the Company's approval not to be unreasonably withheld, to place advertisements in financial and other newspapers and journals at its own expense describing its services hereunder.

(c)     This Agreement may not be amended, waived or modified except by a writing executed by each of the parties and this Agreement, including all controversies arising from or relating to performance under this Agreement, shall be governed by and construed in accordance with the laws of the State of New York, without giving effect such state's rules concerning conflicts of law.   The provisions of this Agreement, including without limitation the obligation to make the payments set forth in Section 3, shall be binding on the Company and its successors and assigns.

(d)     Any lawsuits with respect to, in connection with or arising out of this Agreement shall be brought in a court for the Southern District of New York and the parties hereto consent to the jurisdiction and venue of such court for the Southern District as the sole and exclusive forum, unless such court is unavailable, for the resolution of claims by the parties arising under or relating to this Agreement.  The parties hereto further agree that proper service of process on a party may be made on any agent designated by such party located in the State of New York.

(e)     To the extent permitted by applicable law, each of the Company and PJSC hereby waives trial by jury in any lawsuit with respect to, in connection with or arising out of this Agreement, or any other claim or dispute relating to the engagement of PJSC arising between the parties hereto.  Each of the Company and PJSC hereby confirms that the foregoing waiver is informed and freely made.

(f)     The relationship of PJSC to the Company hereunder shall be that of an independent contractor and PJSC shall have no authority to bind, represent or otherwise act as agent for the Company.

*          *          *

If the foregoing correctly sets forth the understanding and agreement between PJSC and the Company, please so indicate by signing the enclosed copy of this letter, whereupon it shall become a binding agreement between the parties hereto as of the date first above written.

Very truly yours,

PETER J. SOLOMON COMPANY, L.P.

By: Peter J. Solomon Company Limited,
    Its General Partner

By: _____
    Bradley I. Dietz
    Managing Director


PETER J. SOLOMON SECURITIES COMPANY LIMITED

By: _____
    Bradley I. Dietz
    Managing Director


Accepted and Agreed to as of
the day first written above:

M. FABRIKANT & SONS

By: _____
    Michael Shaffet
    Chief Operating Officer

The Company shall indemnify and hold harmless PJSC and its affiliates, counsel and other professional advisors, and the respective directors, officers, controlling persons, agents and employees of each of the foregoing (PJSC and all of such other persons collectively, the "Indemnified Parties"), from and against any losses, claims or proceedings including stockholder actions, damages, judgments, assessments, investigation costs, settlement costs, fines, penalties, arbitration awards, other liabilities, costs, fees and expenses (collectively, "Losses") (i) related to or arising out of (A) oral or written information provided by the Company, the Company's employees or other agents, which either the Company or PJSC provides to any persons, or (B) other action or failure to act by the Company, the Company's employees or other agents or PJSC at the Company's request or with the Company's consent, or (ii) otherwise related to or arising out of the engagement of PJSC under this agreement or any transaction or conduct in connection therewith, provided that this clause (ii) shall not apply if it is finally judicially determined by a court of competent jurisdiction that such Losses arose solely out of the gross negligence or bad faith of such Indemnified Party. If multiple claims are brought against an Indemnified Party in an arbitration, with respect to at least one of which indemnification is permitted under applicable law and provided for under this agreement, the Company agrees that any arbitration award shall be conclusively deemed to be based on claims as to which indemnification is permitted and provided for, except to the extent the arbitration award expressly states that the award, or any portion thereof, is based solely on a claim as to which indemnification is not available.

The Company shall further reimburse any Indemnified Party promptly for, or at the Indemnified Party's option advance amounts sufficient to cover, any legal or other fees or expenses as they are incurred (i) in investigating, preparing or pursuing any action or other proceeding (whether formal or informal) or threat thereof, whether or not in connection with pending or threatened litigation or arbitration and whether or not any Indemnified Party is a party (an "Action") and (ii) in connection with enforcing such Indemnified Party's rights under this agreement (including, without limitation, its rights under this Exhibit A); provided, however, that in the event it is finally judicially determined by a court of competent jurisdiction that the Losses of such Indemnified Party arose solely out of the gross negligence or bad faith of such Indemnified Party, such Indemnified Party will promptly remit to the Company any amounts reimbursed or advanced under this paragraph.

The Company shall, if requested by PJSC, assume the defense of any such Action including the employment of counsel reasonably satisfactory to PJSC and will not settle, compromise, consent or otherwise resolve or seek to terminate any pending or threatened Action (whether or not any Indemnified Party is a party thereto) unless it obtains the prior written consent of PJSC or an express, unconditional release of each Indemnified Party from all liability relating to such Action and the engagement of PJSC under this agreement. Any Indemnified Party shall be entitled to retain separate counsel of its choice and participate in the defense of any Action in connection with any of the matters to which this Exhibit A relates, but the fees and expenses of such counsel shall be at the expense of such Indemnified Party unless: (i) the Company has failed promptly to assume the defense and employ counsel or (ii) the named parties to any such Action (including any impleaded parties) include such Indemnified Party and the Company, and such Indemnified Party shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or in addition to those available to the Company; provided that the Company shall not in such event be responsible under this Exhibit A for the fees and expenses of more than one firm of separate counsel (in addition to local counsel) in connection with any such Action in the same jurisdiction.

The Company agrees that if any right of any Indemnified Party set forth in the preceding paragraphs is finally judicially determined to be unavailable (except by reason of the gross negligence or bad faith of such Indemnified Party), or is insufficient to hold such Indemnified Party harmless against such Losses as contemplated herein, then the Company shall contribute to such Losses (i) in such proportion as is appropriate to reflect the relative benefits received by the Company and its stockholders, on the one hand, and such Indemnified Party, on the other hand, in connection with the transactions contemplated hereby, and (ii) if (and only if) the allocation provided in clause (i) is not permitted by applicable law, in

such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) but also the relative fault of the Company and such Indemnified Party; provided, however, that in no event shall the amount, if any, to be contributed by all Indemnified Parties exceed the amount of the fees actually received by PJSC hereunder. Benefits received (or anticipated to be received) by the Company and its stockholders shall be deemed to be equal to the aggregate cash consideration and value of securities or any other property payable, exchangeable or transferable in any proposed or potential transactions within the scope of this agreement, and benefits received by PJSC shall be deemed to be equal to the compensation payable by the Company to PJSC in connection with this agreement. Relative fault shall be determined by reference to, among other things, whether any alleged untrue statement or omission or any other alleged conduct relates to information provided by the Company or other conduct by the Company (or the Company's employees or other agents) on the one hand or by PJSC on the other hand. The parties hereto agree that it would not be just and equitable if contribution were determined by pro rata allocation or by any other method of allocation that does not take into account the equitable considerations referred to above.

The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with advice or services rendered or to be rendered by any Indemnified Party pursuant to this agreement, the transactions contemplated hereby or any Indemnified Party's actions or inactions in connection with any such advice, services or transactions except for Losses of the Company that are finally judicially determined by a court of competent jurisdiction to have arisen solely out of the gross negligence or bad faith of such Indemnified Party in connection with any such advice, actions, inactions or services.

The rights of the Indemnified Parties hereunder shall be in addition to any other rights that any Indemnified Party may have at common law, by statute or otherwise. Except as otherwise expressly provided for in this Exhibit A, if any term, provision, covenant or restriction contained in this Exhibit A is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this agreement all remain in full force and effect and shall in no way be affected, impaired or invalidated. The reimbursement, indemnity and contribution obligations of the Company set forth herein shall apply to any modification of this agreement and shall remain in full force and effect regardless of any termination of, or the completion of any Indemnified Party's services under or in connection with, this agreement.

EXHIBIT B

## FEE SCHEDULE (SELL-SIDE)

| Aggregate Consideration | Fee Percentage |
|---|---|
| Below $50.0 million | Min. Transaction Fee of $1,000,000 |
| $50.0 million | 2.250% |
| $100.0 million | 2.000% |
| $200.0 million | 1.500% |
| $300.0 million | 1.250% |
| Above $300.0 million | To be Agreed Upon |

The applicable M&A Transaction Fee percentage for Aggregate Consideration amounts which fall between the amounts listed above shall be calculated based on a straight line interpolation of the percentages in the fee schedule. In the event that the Company sells assets in more than one M&A Transaction, Aggregate Consideration shall be calculated for each M&A Transaction separately and shall not be cumulative for the purposes of determining the M&A Transaction Fee percentage.

# EXHIBIT C
## Revised Engagement Letter



PETER J.
SOLOMON
COMPANY

520 Madison Avenue
New York, New York 10022

Tel: 212.508.1600
Fax: 212.508.1633
info@pjsolomon.com

January 24, 2007

M. Fabrikant & Sons, Inc.
One Rockefeller Plaza
New York, New York 10020

Attention: Michael Shaffet
              Chief Operating Officer

       This letter (the "Agreement") will confirm the engagement of Peter J. Solomon Company, L.P. and/or its affiliate Peter J. Solomon Company Limited (collectively "PJSC") by M. Fabrikant & Sons, Inc. as financial advisor in connection with a transaction or series or combination of transactions, whereby, directly or indirectly, (i) M. Fabrikant & Sons, Inc. together with all or certain of its subsidiaries and affiliates (collectively, the "Company") restructures its Debt, in accordance with and pursuant to a Chapter 11 Plan of Reorganization confirmed by the Bankruptcy Court (a "Reorganization Transaction"); (ii) the Company raises capital from any bank, financial institution or other financing source (which excludes the transfer and sale of Senior Bank Debt to or among secondary or tertiary transferees of same) (a "Financing Transaction"); and (iii) control of or a material interest in the assets, business or securities of the Company is acquired by or combined with any person or entity or any of its affiliates (a "Buyer"), including without limitation, through a sale or exchange of capital stock or assets, a merger or consolidation, a tender or exchange offer, a leveraged buy-out, or any other business combination or similar transaction (a "Sale Transaction" and, together with a Reorganization Transaction and Financing Transaction, a "Transaction").

       Section 1.     Services to be Rendered.     PJSC will perform such services as the Company may reasonably request including, but not limited to, the following:

       (a)     PJSC will familiarize itself to the extent it deems appropriate and feasible with the business, operations, properties, financial condition and prospects of the Company, and, to the extent relevant, any prospective Buyer, it being understood that PJSC shall, in the course of such familiarization, rely entirely upon such information as may be supplied by the Company or other relevant parties, including such Buyer and the Company's counsel, without assuming any responsibility for independent investigation or verification thereof;

       (b)     PJSC will assist the Company in the preparation of descriptive information concerning the Company, based upon information provided by the Company, the reasonableness, accuracy and completeness of which information PJSC will not be required to investigate and about which PJSC will express no opinion;

(c)    PJSC will review and analyze the business plans and financial projections prepared by the Company;

(d)    PJSC will evaluate the Company's liquidity needs, potential debt capacity and capitalization based on the Company's projected earnings and cash flows;

(e)    PJSC will assist the Company with developing various financial models and projections to be used in conjunction with a Transaction;

(f)    PJSC will assist the Company with developing and presenting various reporting and informational requirements as may be required from time to time by its Senior Bank Debt holders;

(g)    PJSC will advise and assist the Company in identifying and contacting potential Transaction sponsors;

(h)    PJSC will assist the Company in conducting presentations and due diligence meetings with prospective Transaction sponsors;

(i)    PJSC will advise and assist the Company in developing a general strategy for accomplishing a Transaction, as well as its form and structure;

(j)    PJSC will periodically advise the Company as to the status of dealings with any parties involved in a Transaction and will advise and assist the Company in the course of its negotiations, execution and closing of any Transaction;

(k)    PJSC will advise and assist management of the Company in making presentations to the Company's Board of Directors concerning general strategy and any proposed Transaction;

(l)    PJSC will participate as an advisor to the Company in negotiating and implementing a Transaction;

(m)    PJSC will render such other financial advisory services as may from time to time be agreed upon by PJSC and the Company.

Section 2.    Information Provided by the Company.    The Company will furnish PJSC with such information as PJSC and the Company agree is appropriate to enable PJSC to render services hereunder (all such information being the "Information"). The Company recognizes and confirms that PJSC (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having assumed any obligation to independently verify the same, (b) does not assume responsibility for the accuracy or completeness of the Information and such other information, and (c) will not act in the official capacity of an appraiser of any assets of the Company or any other party. The

Company confirms that the Information to be furnished by the Company, when delivered, to the best of its knowledge, will be true and correct in all material respects, will be prepared in good faith, and will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not misleading. The Company will promptly notify PJSC if it learns of any material inaccuracy or misstatement in, or material omission from, any Information theretofore delivered to PJSC. Except as required by applicable law, PJSC shall keep confidential all non-public Information and shall not disclose such Information without the Company's prior written approval to any third party, other than in confidence to the Company and its advisors and to such of PJSC's directors, officers, employees, counsel and advisors (whom PJSC shall instruct to maintain the confidentiality of such information in accordance with this Agreement) as PJSC determines to have a need to know in order to render services hereunder.

Section 3.    Fees.    As compensation for the services rendered hereunder, the Company and its successors, if any, agrees to pay PJSC (via wire transfer or other mutually acceptable means) the following fees in cash:

(a) A monthly fee (the "Monthly Fee") equal to $100,000 per month, with the first Monthly Fee payable in advance upon the execution of this Agreement and such additional Monthly Fees on each monthly anniversary of the date hereof during the term of PJSC's engagement hereunder.

(b) In the event of a Reorganization Transaction, a transaction fee (the "Reorganization Transaction Fee") in an amount equal to $1,500,000. The Reorganization Transaction Fee shall be payable upon the effective date of the Company's Chapter 11 Plan of Reorganization.

(c) In the event of a Financing Transaction, one or more transaction fees (the "Financing Transaction Fee") in an amount equal to the following percentages of the gross proceeds of any Financing:

| If Capital Raised in the Form of | Financing Transaction Fee Percentage |
| --- | --- |
| Senior Secured Debt | 1.00% |
| Debt Junior to the Secured Bank Debt | 3.00% |
| Equity | 5.00% |

New loans or commitments provided by the existing banks will not be subject to a Financing Transaction Fee.

(d) In the event of a Sale Transaction, a transaction fee (the "Sale Transaction Fee") equal to the applicable percentage, as set forth on Exhibit B hereto, of the Aggregate Consideration (as defined below) paid or payable in connection with a Transaction.

The Sale Transaction Fee shall be contingent upon the consummation of a Sale Transaction and shall be payable at the closing thereof, provided that compensation attributable to that part of Aggregate Consideration which is contingent upon the realization of future financial performance (e.g. an earn-out or similar provision) shall be paid by the Company to PJSC promptly upon the receipt of such Aggregate Consideration by the Company, its shareholders or other parties. Compensation attributable to that part of Aggregate Consideration which is deferred (including without limitation any Aggregate Consideration held in escrow) shall be valued at the total stated amount of such consideration without applying a discount thereto and shall be paid by the Company at the closing of a Sale Transaction.

For purposes hereof, the term "Aggregate Consideration" shall mean the total amount of all cash, securities, contractual arrangements (including any lease arrangements or put or call agreements) and other properties paid or payable, directly or indirectly in connection with a Sale Transaction (including, without limitation, amounts paid (i) pursuant to covenants not to compete, employment contracts, employee benefit plans, management fees or other similar arrangements, and (ii) to holders of any warrants, stock purchase rights or convertible securities of the Company and to holders of any options or stock appreciation rights issued by the Company, whether or not vested). Aggregate Consideration shall also include the amount of any short-term debt and long-term liabilities of the Company (including the principal amount of any indebtedness for borrowed money and capitalized leases and the full amount of any off-balance sheet financings) (x) repaid or retired in connection with or in anticipation of a Sale Transaction or (y) existing on the Company's balance sheet at the time of a Sale Transaction (if such Sale Transaction takes the form of a merger, consolidation or a sale of stock or partnership interests) or assumed in connection with a Sale Transaction (if such Sale Transaction takes the form of a sale of assets). For purposes of calculating the amount of revolving credit debt in the preceding sentence, the arithmetic mean of the amount of revolving credit debt outstanding on the last day of each month during the 12 months preceding the closing of the Sale Transaction will be used. In the event such Sale Transaction takes the form of a sale of assets, Aggregate Consideration shall include (i) the value of any current assets not purchased, minus (ii) the value of any current liabilities not assumed. In the event such Sale Transaction takes the form of a recapitalization, restructuring, spin-off, split-off or similar transaction, Aggregate Consideration shall include the fair market value of (i) the equity securities of the Company retained by the Company's security holders following such Sale Transaction and (ii) any securities received by the Company's security holders in exchange for or in respect of securities of the Company following such Sale Transaction (all securities received by such security holders being deemed to have been paid to such security holders in such Sale Transaction). The value of securities that are freely tradable in an established public market will be determined on the basis of the last market closing price prior to the consummation of a Sale Transaction. The value of securities, lease payments and other consideration that are not freely tradable or have no established public market, or if the consideration utilized consists of property other than securities, the value of such property shall be the fair market value thereof as determined in good faith by PJSC,

provided, however, that all debt securities shall be valued at their stated principal amount without applying a discount thereto.

PJSC shall not be entitled to any transactional fee in the event the assets and business of the Company are liquidated through a forced liquidation and cessation of the Company's business or a Chapter 7 proceeding.

Section 4.    Credit.  PJSC shall credit 100% of up to a maximum of the first six months of fees paid to PJSC under Section 3(a) above toward any fee payable under Sections 3(b), 3(c) and 3(d).

Section 5.    Expenses.    Without in any way reducing or affecting the provisions of Exhibit A hereto, the Company shall reimburse PJSC for its reasonable, out-of-pocket expenses incurred in connection with the provision of services hereunder. Additionally, the Company shall reimburse PJSC for the fees, disbursements and other charges of PJSC's outside counsel.  Out-of-pocket expenses also shall include, but not be limited to, overnight travel and lodging, communication charges, research and courier services.  The Company shall promptly reimburse PJSC upon presentation of an invoice or other similar documentation; provided, however, that the incurrence of any single out-of-pocket expense or disbursement pursuant hereto of an amount in excess of $2,500 shall be pre-approved by the Company.

Section 6.    Indemnity and Other Rights. The    Company    agrees    to    the provisions of Exhibit A hereto, which is an integral part of this Agreement and the terms of which are incorporated by reference herein.   Such Exhibit A shall survive any termination, expiration or completion of PJSC's engagement hereunder.

Section 7.    Term.

The term of this Agreement shall extend from the date hereof for a period of two months and shall continue thereafter on a month-to-month basis; provided that (i) either the Company or PJSC may terminate this Agreement upon 15 days advance notice delivered in writing; (ii) upon termination, PJSC shall be entitled to any fees for any monthly period which are due and owing to PJSC upon the effective date of termination, such amounts to be pro-rated for any incomplete monthly period of service; (iii) termination of PJSC's engagement hereunder shall not affect the Company's continuing obligations under Section 7 and Exhibit A hereof; (iv) PJSC shall be entitled to its full fees under Section 3 hereof in the event that any Transaction is consummated at any time prior to the expiration of one year after such termination, or a letter of intent or definitive agreement with respect to any Transaction is executed at any time prior to one year after such termination (which letter of intent or definitive agreement subsequently results in the consummation of such Transaction at any time); and (v) termination of PJSC's engagement hereunder shall not affect the Company's obligation to reimburse the expenses accruing prior to such termination to the extent provided for in Section 4.

Section 8.    Miscellaneous.

(a)     The advice (oral or written) rendered by PJSC pursuant to this Agreement is intended solely for the benefit and use of senior management of the Company and the Board in considering the matters to which this Agreement relates, and the Company agrees that such advice may not be relied upon by any other person, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose except as required by law nor shall any public references to PJSC be made by the Company without the prior written consent of PJSC which shall not be unreasonably withheld.

(b)     The Company agrees that PJSC shall have the right after completion of a Transaction, subject to the Company's approval not to be unreasonably withheld, to place advertisements in financial and other newspapers and journals at its own expense describing its services hereunder.

(c)     This Agreement may not be amended, waived or modified except by a writing executed by each of the parties and this Agreement, including all controversies arising from or relating to performance under this Agreement, shall be governed by and construed in accordance with the laws of the State of New York, without giving effect such state's rules concerning conflicts of law.  The provisions of this Agreement, including without limitation the obligation to make the payments set forth in Section 3, shall be binding on the Company and its successors and assigns.

(d)     Any lawsuits with respect to, in connection with or arising out of this Agreement shall be brought in a court for the Southern District of New York and the parties hereto consent to the jurisdiction and venue of such court for the Southern District as the sole and exclusive forum, unless such court is unavailable, for the resolution of claims by the parties arising under or relating to this Agreement.  The parties hereto further agree that proper service of process on a party may be made on any agent designated by such party located in the State of New York.

(e)     To the extent permitted by applicable law, each of the Company and PJSC hereby waives trial by jury in any lawsuit with respect to, in connection with or arising out of this Agreement, or any other claim or dispute relating to the engagement of PJSC arising between the parties hereto.  Each of the Company and PJSC hereby confirms that the foregoing waiver is informed and freely made.

(f)     The relationship of PJSC to the Company hereunder shall be that of an independent contractor and PJSC shall have no authority to bind, represent or otherwise act as agent for the Company.

*       *       *

If the foregoing correctly sets forth the understanding and agreement between PJSC and the Company, please so indicate by signing the enclosed copy of this letter, whereupon it shall become a binding agreement between the parties hereto as of the date first above written.

Very truly yours,

PETER J. SOLOMON COMPANY, L.P.

By: Peter J. Solomon Company Limited,
     Its General Partner


By:_____
     Bradley I. Dietz
     Managing Director


PETER J. SOLOMON SECURITIES COMPANY LIMITED


By:_____
     Bradley I. Dietz
     Managing Director


Accepted and Agreed to as of
the day first written above:

M. FABRIKANT & SONS


By:_____
     Michael Shaffet
     Chief Operating Officer

The Company shall indemnify and hold harmless PJSC and its affiliates, counsel and other professional advisors, and the respective directors, officers, controlling persons, agents and employees of each of the foregoing (PJSC and all of such other persons collectively, the "Indemnified Parties"), from and against any losses, claims or proceedings including stockholder actions, damages, judgments, assessments, investigation costs, settlement costs, fines, penalties, arbitration awards, other liabilities, costs, fees and expenses (collectively, "Losses") (i) related to or arising out of (A) oral or written information provided by the Company, the Company's employees or other agents, which either the Company or PJSC provides to any persons, or (B) other action or failure to act by the Company, the Company's employees or other agents or PJSC at the Company's request or with the Company's consent, or (ii) otherwise related to or arising out of the engagement of PJSC under this agreement or any transaction or conduct in connection therewith, provided that this clause (ii) shall not apply if it is finally judicially determined that such Losses arose solely out of the gross negligence or bad faith of such Indemnified Party. If multiple claims are brought against an Indemnified Party in an arbitration, with respect to at least one of which indemnification is permitted under applicable law and provided for under this agreement, the Company agrees that any arbitration award shall be conclusively deemed to be based on claims as to which indemnification is permitted and provided for, except to the extent the arbitration award expressly states that the award, or any portion thereof, is based solely on a claim as to which indemnification is not available.

The Company shall further reimburse any Indemnified Party promptly for, or at the Indemnified Party's option advance amounts sufficient to cover, any legal or other fees or expenses as they are incurred (i) in investigating, preparing or pursuing any action or other proceeding (whether formal or informal) or threat thereof, whether or not in connection with pending or threatened litigation or arbitration and whether or not any Indemnified Party is a party (an "Action") and (ii) in connection with enforcing such Indemnified Party's rights under this agreement (including, without limitation, its rights under this Exhibit A); provided, however, that in the event it is finally judicially determined by a court of competent jurisdiction that the Losses of such Indemnified Party arose solely out of the gross negligence or bad faith of such Indemnified Party, such Indemnified Party will promptly remit to the Company any amounts reimbursed or advanced under this paragraph.

The Company shall, if requested by PJSC, assume the defense of any such Action including the employment of counsel reasonably satisfactory to PJSC and will not settle, compromise, consent or otherwise resolve or seek to terminate any pending or threatened Action (whether or not any Indemnified Party is a party thereto) unless it obtains the prior written consent of PJSC or an express, unconditional release of each Indemnified Party from all liability relating to such Action and the engagement of PJSC under this agreement. Any Indemnified Party shall be entitled to retain separate counsel of its choice and participate in the defense of any Action in connection with any of the matters to which this Exhibit A relates, but the fees and expenses of such counsel shall be at the expense of such Indemnified Party unless: (i) the Company has failed promptly to assume the defense and employ counsel or (ii) the named parties to any such Action (including any impleaded parties) include such Indemnified Party and the Company, and such Indemnified Party shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or in addition to those available to the Company; provided that the Company shall not in such event be responsible under this Exhibit A for the fees and expenses of more than one firm of separate counsel (in addition to local counsel) in connection with any such Action in the same jurisdiction.

The Company agrees that if any right of any Indemnified Party set forth in the preceding paragraphs is finally judicially determined to be unavailable (except by reason of the gross negligence or bad faith of such Indemnified Party), or is insufficient to hold such Indemnified Party harmless against such Losses as contemplated herein, then the Company shall contribute to such Losses (i) in such proportion as is appropriate to reflect the relative benefits received by the Company and its stockholders, on the one hand, and such Indemnified Party, on the other hand, in connection with the transactions contemplated hereby, and (ii) if (and only if) the allocation provided in clause (i) is not permitted by applicable law, in

such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) but also the relative fault of the Company and such Indemnified Party; provided, however, that in no event shall the amount, if any, to be contributed by all Indemnified Parties exceed the amount of the fees actually received by PJSC hereunder. Benefits received (or anticipated to be received) by the Company and its stockholders shall be deemed to be equal to the aggregate cash consideration and value of securities or any other property payable, exchangeable or transferable in any proposed or potential transactions within the scope of this agreement, and benefits received by PJSC shall be deemed to be equal to the compensation payable by the Company to PJSC in connection with this agreement. Relative fault shall be determined by reference to, among other things, whether any alleged untrue statement or omission or any other alleged conduct relates to information provided by the Company or other conduct by the Company (or the Company's employees or other agents) on the one hand or by PJSC on the other hand. The parties hereto agree that it would not be just and equitable if contribution were determined by pro rata allocation or by any other method of allocation that does not take into account the equitable considerations referred to above.

The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with advice or services rendered or to be rendered by any Indemnified Party pursuant to this agreement, the transactions contemplated hereby or any Indemnified Party's actions or inactions in connection with any such advice, services or transactions except for Losses of the Company that are finally judicially determined by a court of competent jurisdiction to have arisen solely out of the gross negligence or bad faith of such Indemnified Party in connection with any such advice, actions, inactions or services.

The rights of the Indemnified Parties hereunder shall be in addition to any other rights that any Indemnified Party may have at common law, by statute or otherwise. Except as otherwise expressly provided for in this Exhibit A, if any term, provision, covenant or restriction contained in this Exhibit A is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this agreement all remain in full force and effect and shall in no way be affected, impaired or invalidated. The reimbursement, indemnity and contribution obligations of the Company set forth herein shall apply to any modification of this agreement and shall remain in full force and effect regardless of any termination of, or the completion of any Indemnified Party's services under or in connection with, this agreement.

**EXHIBIT B**

## FEE SCHEDULE (SELL-SIDE)

| Aggregate Consideration | Fee Percentage |
|---|---|
| Below $50.0 million | Min. Transaction Fee of $1,000,000 |
| $50.0 million | 2.250% |
| $100.0 million | 2.000% |
| $200.0 million | 1.500% |
| $300.0 million | 1.250% |
| Above $300.0 million | To be Agreed Upon |

The applicable M&A Transaction Fee percentage for Aggregate Consideration amounts which fall between the amounts listed above shall be calculated based on a straight line interpolation of the percentages in the fee schedule. In the event that the Company sells assets in more than one M&A Transaction, Aggregate Consideration shall be calculated for each M&A Transaction separately and shall not be cumulative for the purposes of determining the M&A Transaction Fee percentage.

# EXHIBIT D
## Employment Application

TROUTMAN SANDERS LLP
405 Lexington Avenue
New York, NY 10174
Tel: 212-704-6000
Fax: 212-704-6288
Mitchel H. Perkiel (MP - 8691)
Lee W. Stremba (LS - 0117)
Paul H. Deutch (PD - 4859)

Proposed Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                               :

In re                            :       Chapter 11
                               :
M. FABRIKANT & SONS, INC. and   :      Case No. 06-_____ (____)
FABRIKANT -- LEER INTERNATIONAL, LTD.  :
        Debtors.           :       (Jointly Administered)
                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


### APPLICATION OF DEBTORS AND DEBTORS IN POSSESSION, PURSUANT TO SECTION 327(A) OF THE BANKRUPTCY CODE, RULE 2014(A) OF THE BANKRUPTCY RULES AND LOCAL BANKRUPTCY RULE 2014-1, FOR ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF PETER J. SOLOMON COMPANY AS FINANCIAL ADVISORS

TO THE HONORABLE _____
UNITED STATES BANKRUPTCY JUDGE:

       M. Fabrikant & Sons, Inc. ("MFS") and Fabrikant-Leer International, Ltd.

("FLI"), as debtors and debtors-in-possession (collectively, the "Debtors"), by and through their

undersigned attorneys, Troutman Sanders LLP, move before the Court pursuant to sections

327(a) of title 11, United States Code (the "Bankruptcy Code"), rule 2014(a) of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 2014-1 of the Local

Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"):

authoring the employment and retention of the Peter J. Solomon Company ("PJSC"), nunc pro tunc as of the Petition Date (defined herein), pursuant to the terms of its engagement letter dated August 24, 2006 (the "Engagement Letter")[1], as the Debtors' financial advisors in the above-captioned chapter 11 cases (the "Motion").[2] In support of the Motion, the Debtors respectfully represent as follows:

## BACKGROUND

1. On the date hereof (the "Petition Date"), the Debtors commenced their reorganization cases in this Court by filing voluntary petitions for relief under chapter 11 of title 11 of the Bankruptcy Code. By motion filed on the Petition Date, the Debtors have requested that their chapter 11 cases be consolidated for procedural purposes only and administered jointly.

2. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. Established over one hundred (100) years ago in 1895, MFS became one of the world's largest manufacturers and distributors of diamonds as well as an industry leader in diamond and gemstone jewelry. MFS is a privately held New York corporation and owns eighty-one (81%) percent of debtor FLI, also a New York corporation. MFS also owns one hundred (100%) percent of Diamond Mounting, Inc., a New York corporation, seventy-six (76%) percent of Fabrikant Trading PVT Ltd, an Indian Corporation, fifty (50%) percent of both Brilliant Trading Company, LLC, a New York limited liability company, and Fancy Trading Company, LLC, a New York limited liability company, forty-five (45%) percent of Alpha

---

[1] A copy of the executed Engagement Letter is annexed hereto as Exhibit A.

[2] A proposed form of order is annexed hereto as Exhibit C.

Diamond, an Israeli company, and twenty-seven (27%) percent of Fabrikant-Tara International LLC ("FTI"), a Delaware limited liability company. MFS is a worldwide business with direct and indirect ownership of and business affiliations or relationships with over forty (40) companies located in ten (10) countries.[3] MFS and FLI currently have, in the aggregate, ninety-nine (99) domestic employees. For the fiscal year ended July 31, 2005, MFS and its direct subsidiaries generated sales of approximately $370 million.

4.    While the sale of loose diamonds, solitaires and couture jewelry to all segments of the market is currently its core business, until April, 2005, MFS was also a wholesaler of diamond and gemstone jewelry. At that time, MFS transitioned substantially all of its jewelry business to FLI, a then-existing subsidiary of MFS, in order to consolidate the Debtors' similar businesses. Subsequent thereto, in the Spring of 2006, the Debtors were faced with a lack of liquidity and an inability to effectively fulfill customer orders for the upcoming Christmas season. At that time, the Tara Group, a significant India-based jewelry manufacturer and supplier to the Debtors, approached the Debtors about assuming all of FLI's existing and future purchase orders to meet customer needs. As a result of this offer, a member of the Tara Group, Tara Jewels Holdings, Inc., and MFS formed FTI. Without the formation of FTI, the Debtors would have been unable to continue in the jewelry business. Moreover, the formation of FTI allowed for the reduction of ongoing working capital requirements of the Debtors' operations, the outsourcing of all production and quality control to a low-cost center, the elimination of design, merchandising and sales in the U.S., the avoidance or reduction of customer returns, charge-backs, allowances and other deductions.

5.    MFS and FLI have a number of non-debtor domestic and foreign subsidiaries and

---

[3]    Several of these business affiliations or relationships are with entities that are owned or controlled, or in which investments have been made, by Charles F. Fortgang, Matthew F. Fortgang, and various trusts for the benefit of Matthew F. Fortgang and Susan F. Fortgang.

investments (collectively, the "Non-debtor Subsidiaries"). The Non-debtor Subsidiaries, among other things, sell round and fancy loose diamonds to wholesalers and independent jewelry retailers, maintain a diamond purchasing office in Israel, act as a wholesaler of loose diamonds in the Indian, Asian and U.S. markets as well as provide the Debtors with a channel through which to purchase diamonds.

6.       There are numerous factors, discussed in greater detail in the Affidavit Of Matthew Fortgang Pursuant To Local Bankruptcy Rule 1007-2 And In Support Of First Day Motions (the "Fortgang Affidavit"), that contributed to the Debtors' need for availing themselves of chapter 11 relief. In general, the commencement of these chapter 11 cases was due to several converging events which occurred over the course of the past two years that severely impacted the businesses and operations of the Debtors. These include the bankruptcies of two of its larger retail customers that led to substantial write-offs and reduced cash flow; the financial restructuring of a third significant customer, that required the long term deferral of a substantial portion of the then-current receivables; the implementation by one of its most significant customers of poorly performing initiatives to source diamonds and jewelry directly overseas, thereby eliminating purchases from the Debtors; and an unfavorable interest rate swap which led to significant cash losses. Additionally, lower margins, in part as a result of an increase in gold prices and diminished free cash flow due to the competitive environment and increasing pressure from low cost jewelry manufacturers adversely affected the Debtors. The foregoing, in turn, spurred the Debtors' banks (defined in the Fortgang Affidavit as the "Pre-petition Lenders"), all of which provided domestic credit facilities under separate bilateral agreements, to impose constraints on the Debtors' liquidity that, in turn, further limited the Debtors' inventory purchasing capability, resulting in substantially reduced overall sales revenues.

-4-

7.     The Debtors commenced these chapter 11 cases after a thorough review of all of their refinancing and restructuring alternatives and only after it became clear that an out-of-court alternative could not be completed in sufficient time to address pressing liquidity issues.

## JURISDICTION

1.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. § 1408 and 1409. The statutory predicates for the relief sought herein are set forth in section 327(a) of the Bankruptcy Code and Rule 2014 of the Bankruptcy Rules.

## RELIEF REQUESTED

2.     Pursuant to sections 327(a) of the Bankruptcy Code, Rules 2014(a) and 2014-1 of the Bankruptcy Rules and the Local Bankruptcy Rules, respectively, the Debtors hereby seek the entry of an order authorizing them to retain and employ PJSC as the Debtors financial advisors in these chapter 11 cases, nunc pro tunc as of the Petition Date.[4]  In support of this Motion, the Debtors submit (a) the Affidavit of Joseph C. Stein, III, a Managing Director of PJSC (the "Stein Affidavit"), a copy of which is attached hereto as Exhibit B.

A.     PJSC'S Experience

3.     The Debtors are familiar with the professional standing and reputation of PJSC. PJSC is led by Founder and Chairman Peter J. Solomon, whose career spans more than 35 years in financial advisory services. Its eleven Managing Directors and four Senior Advisors have extensive experience in a variety of disciplines, including strategic analysis, mergers,

---

[4]     Nunc pro tunc retention is appropriate because this Motion was filed on the Petition Date. PJSC will continue to provide services to the Debtors from and after the Petition Date and a final hearing on this Motion will not be conducted, and a final order will not be entered, until after the Petition Date.

acquisitions, financings, recapitalizations, restructurings and principal investments as well as accounting. PJSC professionals have assisted and advised (including providing restructuring advice) to debtors, creditors, creditors' committees, bondholders, investors, and others in numerous bankruptcy cases such as Mirant Corporation, Calpine Corporation, Owens Corning, Armstrong World Industries, Inc., Portrait Corporation of America, Syratech Corporation, and Northwest Airlines Corporation. The Debtors submit that such experience and knowledge will be valuable to the Debtors in their efforts to reorganize. Accordingly, the Debtors wish to retain PJSC to provide financial advisory services during these chapter 11 cases.

4. Pursuant to the Engagement Letter, it is expected that PJSC will provide the following services to the Debtors:

(a) PJSC will familiarize itself to the extent it deems appropriate and feasible with the business, operations, properties, financial condition and prospects of the Company, and, to the extent relevant, any prospective Buyer, it being understood that PJSC shall, in the course of such familiarization, rely entirely upon such information as may be supplied by the Company or other relevant parties, including such Buyer and the Company's counsel, without assuming any responsibility for independent investigation or verification thereof;

(b) PJSC will assist the Company in the preparation of descriptive information concerning the Company, based upon information provided by the Company, the reasonableness, accuracy and completeness of which information PJSC will not be required to investigate and about which PJSC will express no opinion;

(c) PJSC will review and analyze the business plans and financial projections prepared by the Company;

(d) PJSC will evaluate the Company's liquidity needs, potential debt capacity and capitalization based on the Company's projected earnings and cash flows;

(e) PJSC will assist the Company with developing various financial models and projections to be used in conjunction with a Transaction;

(f)    PJSC will assist the Company with developing and presenting various reporting and informational requirements as may be required from time to time by its Senior Bank Debt holders;

(g)    PJSC will advise and assist the Company in identifying and contacting potential Transaction sponsors;

(h)    PJSC will assist the Company in conducting presentations and due diligence meetings with prospective Transaction sponsors;

(i)    PJSC will advise and assist the Company in developing a general strategy for accomplishing a Transaction, as well as its form and structure;

(j)    PJSC will periodically advise the Company as to the status of dealings with any parties involved in a Transaction and will advise and assist the Company in the course of its negotiations, execution and closing of any Transaction;

(k)    PJSC will advise and assist management of the Company in making presentations to the Company's Board of Directors concerning general strategy and any proposed Transaction;

(l)    PJSC will participate as an advisor to the Company in negotiating and implementing a Transaction;

(m)    PJSC will render such other financial advisory services as may from time to time be agreed upon by PJSC and the Company.

5.    The Debtors hereby request that the Court approve PJSC's retention nunc pro tunc to the Petition Date. This is appropriate because, since that date, PJSC has provided services to the Debtors, which services include reviewing the Debtors' financial and operating information, analyzing various issues confronting the Debtors and their creditors in connection with the Debtors' restructurings.

B.    The Terms of PJSC's Engagement

6.    As described more fully in the Engagement Letter, PJSC will be entitled to receive as compensation for its services, the following:

(a)    a $100,000 monthly advisory fee; and

(b)    the reimbursement of all reasonable and actual out of pocket expenses

(c)    a commission based fee, as more specifically set forth in Section 3 of the Engagement Letter, based on either a restructuring, financing or sale transaction.

7.    The Engagement Letter also provides that the Debtors shall indemnify and hold PJSC harmless against any and all losses, claims, damages or liabilities in connection with the engagement, except to the extent they arise as a result of any gross negligence, willful misconduct, bad faith or self-dealing on the part of PJSC in the performance of its services.

8.    As described more fully in the Stein Affidavit, the terms of the Engagement Letter are similar to the terms both financial and otherwise, agreed to by PJSC and other financial advisors, both inside and outside of bankruptcy.

9.    The terms of the Engagement Letter were heavily negotiated between PJSC and the Debtors, and reflect extensive work to be performed by PJSC as the Debtors' financial advisory experts.

## BASIS FOR RELIEF REQUESTED

10.    Under section 327(a) of the Bankruptcy Code, a debtor in possession is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons,[5] to represent or assist the [debtor in possession] in carrying out [its] duties under this title." 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code modifies sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the

---

[5]    Section 101(14) of the Bankruptcy Code defines the phrase "disinterested person" as: a person that (A) is not a creditor, an equity security holder, or an insider; (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason. 11 U.S.C. § 101(14).

Bankruptcy Code, providing that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

11.    As required by Bankruptcy Rule 2014(a) and Local Bankruptcy Rule 2014-1,[6] this Motion, and the Stein Affidavit, set forth: (a) the specific facts showing the necessity for PJSC's employment; (b) the reasons for the Debtors' selection of PJSC as their financial advisors in connection with their chapter 11 cases; (c) the professional services to be provided by PJSC; (d) the arrangement between the Debtors and PJSC with respect to compensation (as well as the reasonableness thereof); and (e) to the best of the Debtors' knowledge, the extent of PJSC's connections, if any, to certain parties in interest in these matters. Pursuant to section 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the Orders of this Court, PJSC will apply to the Court for final allowance of compensation and reimbursement of expenses.

12.    Because PJSC will be compensated with a fixed monthly fee, PJSC respectfully submits that it shall be permitted to provide general summaries of tasks and hours and shall not be required to maintain or provide detailed time records in connection with its fee applications.

---

[6]    Bankruptcy Rule 2014(a) provides that an application seeking the employment of professional persons pursuant to section 327 of the Bankruptcy Code shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. Local Bankruptcy Rule 2014-1 further provides that "an application for the employment of a professional person pursuant to §§ 327 and 328 of the Bankruptcy Code shall state the specific facts showing the reasonableness of the terms and conditions of the employment, including the terms of any retainer, hourly fee, or contingent fee arrangement."

-9-

C. PJSC's Disinterestedness

13. PJSC's compliance with the requirements of section 504 of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016 is set forth in detail in the Stein Affidavit.

14. In summary however, the Stein Affidavit demonstrates that PJSC does not represent any of the Debtors' creditors or other parties to these chapter 11 cases, or their respective attorneys or accountants, in any matter that is adverse to the interests of any of the Debtors except as otherwise discussed below, and PJSC is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code.

15. Specifically, Bradley I. Dietz, a Managing Director of PJSC, was and is a board member of non-party Friedman's Inc. ("Friedman's"). While Friedman's was one of the Debtors' largest pre-petition customers, PJSC represents Friedman's does not hold any "claim" against the Debtors or their respective estates within the meaning of 101(5) of the Bankruptcy Code. As Friedman's holds no such cognizable claim within the meaning of section 101(5) of the Bankruptcy Code, PJSC cannot be said to hold an "adverse interest" against either Debtor.

16. As to the remaining PJSC principals, associates and employees, PJSC represents that they:

    (a)    are not creditors, equity security holders or insiders of the Debtors;

    (b)    are not and were not, within 2 years before the Petition Date, directors, officers, or employees of the Debtors; and

    (c)    do not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors for any other reason.

-10-

17.     To make this determination, PJSC subjected the parties set forth on Schedule B-1 of the Stein Affidavit to its internal conflicts procedures, these parties included: (i) the Debtors and their affiliates; (ii) the Debtors' directors and officers; (ii) the Debtors' lenders; (iii) the Debtors' significant stockholders; (iv) the Debtors' major trade creditors; (v) the Debtors' 20 largest creditors; (vi) the professional firms that have been identified for employment in the chapter 11 cases; (vii) the Office of the United States Trustee; and (viii) certain other parties-in-interest.

18.     After consideration, PJSC has determined that none of its directors, advisors, associates or analysts has any connection with the Debtors, their professional advisors, their creditors, the Office of the United States Trustee or any employee thereof, except to the extent described above. Accordingly, PJSC submits that it does not hold any interest adverse to any of the Debtors or their estates in the matters upon which they are to be engaged herein and thus, are "disinterested" within the meaning of the Bankruptcy Code.

## MEMORANDUM OF LAW

19.     This Motion includes citations to the applicable authorities and does not raise any novel issues of law. Accordingly, the Debtors respectfully request that the Court waive the requirement contained in Local Bankruptcy Rule 9013-1(b) that a separate memorandum of law be submitted.

## NOTICE

20.     No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Pre-petition Lenders; and (c) the creditors holding the 20 largest unsecured claims against each of the Debtors' estates.

-11-

as identified in the Debtors' chapter 11 petitions. The Debtors submit that no other or further notice need be provided.

21.     No prior request for the relief sought in this Motion has been made to this or any other Court.

**WHEREFORE**, the Debtors respectfully request that the Court: (a) enter an order substantially in the form attached hereto as Exhibit C, granting the relief requested herein; and (b) grant such other and further relief to the Debtors as the Court may deem proper.

Dated: November 17, 2006          Respectfully submitted,
      New York, New York

                                  /s/   Mitchel H. Perkiel
                                  Mitchel H. Perkiel (MP - 8691)
                                  Lee W. Stremba (LS - 0117)
                                  Paul H. Deutch (PD - 4859)
                                  TROUTMAN SANDERS LLP
                                  405 Lexington Avenue
                                  New York, NY 10174
                                  Tel: 212-704-6000

                                  PROPOSED ATTORNEYS FOR
                                  DEBTORS AND DEBTORS IN
                                  POSSESSION

# EXHIBIT A

# ENGAGEMENT LETTER



520 Madison Avenue
New York, New York 10022

Tel: 212.508.1600
Fax: 212.508.1633
info@pjsolomon.com

August 24, 2006

M. Fabrikant & Sons, Inc.
One Rockefeller Plaza
New York, New York 10020

Attention: Michael Shaffet
Chief Operating Officer

This letter (the "Agreement") will confirm the engagement of Peter J. Solomon Company, L.P. and/or its affiliate Peter J. Solomon Company Limited (collectively "PJSC") by M. Fabrikant & Sons, Inc. as financial advisor in connection with a transaction or series or combination of transactions, whereby, directly or indirectly, (i) M. Fabrikant & Sons, Inc. together with all or certain of its subsidiaries and affiliates (collectively, the "Company") renegotiates and/or restructures its Senior Bank Debt obtaining waivers, amendments and/or forbearances under the Company's bank loan documents as are necessary to prevent a default from arising, or cure any default, under any financial covenants set forth therein for a period of four fiscal quarters, (a "Restructuring Transaction"); (ii) the Company raises capital from any bank, financial institution or other financing source (a "Financing Transaction"); and (iii) control of or a material interest in the assets, business or securities of the Company is acquired by or combined with any person or entity or any of its affiliates (a "Buyer"), including without limitation, through a sale or exchange of capital stock or assets, a merger or consolidation, a tender or exchange offer, a leveraged buy-out, or any other business combination or similar transaction (a "Sale Transaction" and, together with a Restructuring Transaction and Financing Transaction, a "Transaction").

Section 1.    Services to be Rendered.    PJSC will perform such services as the Company may reasonably request including, but not limited to, the following:

(a)    PJSC will familiarize itself to the extent it deems appropriate and feasible with the business, operations, properties, financial condition and prospects of the Company, and, to the extent relevant, any prospective Buyer, it being understood that PJSC shall, in the course of such familiarization, rely entirely upon such information as may be supplied by the Company or other relevant parties, including such Buyer and the Company's counsel, without assuming any responsibility for independent investigation or verification thereof;

(b)    PJSC will assist the Company in the preparation of descriptive information concerning the Company, based upon information provided by the Company, the

Shrikant & Sons
June 24, 2006
Page 3

reasonableness, accuracy and completeness of which information PJSC will not be
required to investigate and about which PJSC will express no opinion;

    (c)    PJSC will review and analyze the business plans and financial projections
prepared by the Company;

    (d)    PJSC will evaluate the Company's liquidity needs, potential debt capacity
and capitalization based on the Company's projected earnings and cash flows;

    (e)    PJSC will assist the Company with developing various financial models
and projections to be used in conjunction with a Transaction;

    (f)    PJSC will assist the Company with developing and presenting various
reporting and informational requirements as may be required from time to time by its
Senior Bank Debt holders;

    (g)    PJSC will advise and assist the Company in identifying and contacting
potential Transaction sponsors;

    (h)    PJSC will assist the Company in conducting presentations and due
diligence meetings with prospective Transaction sponsors;

    (i)    PJSC will advise and assist the Company in developing a general strategy
for accomplishing a Transaction, as well as its form and structure;

    (j)    PJSC will periodically advise the Company as to the status of dealings
with any parties involved in a Transaction and will advise and assist the Company in the
course of its negotiations, execution and closing of any Transaction;

    (k)    PJSC will advise and assist management of the Company in making
presentations to the Company's Board of Directors concerning general strategy and any
proposed Transaction;

    (l)    PJSC will participate as an advisor to the Company in negotiating and
implementing a Transaction;

    (m)    PJSC will render such other financial advisory services as may from time
to time be agreed upon by PJSC and the Company.

Section 2.    Information Provided by the Company.    The Company will
furnish PJSC with such information as PJSC and the Company agree is appropriate to
enable PJSC to render services hereunder (all such information being the "Information").
The Company recognizes and confirms that PJSC (a) will use and rely primarily on the
Information and on information available from generally recognized public sources in
performing the services contemplated by this Agreement without having assumed any
obligation to independently verify the same, (b) does not assume responsibility for the

accuracy or completeness of the Information and such other information, and (c) will not act in the official capacity of an appraiser of any assets of the Company or any other party. The Company confirms that the Information to be furnished by the Company, when delivered, to the best of its knowledge, will be true and correct in all material respects, will be prepared in good faith, and will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not misleading. The Company will promptly notify PJSC if it learns of any material inaccuracy or misstatement in, or material omission from, any Information theretofore delivered to PJSC. Except as required by applicable law, PJSC shall keep confidential all non-public Information and shall not disclose such Information without the Company's prior written approval to any third party, other than in confidence to the Company and its advisors and to such of PJSC's directors, officers, employees, counsel and advisors (whom PJSC shall instruct to maintain the confidentiality of such information in accordance with this Agreement) as PJSC determines to have a need to know in order to render services hereunder.

    Section 3.    Fees.    As compensation for the services rendered hereunder, the Company and its successors, if any, agrees to pay PJSC (via wire transfer or other mutually acceptable means) the following fees in cash:

    (a) A monthly fee (the "Monthly Fee") equal to $100,000 per month, with the first Monthly Fee payable in advance upon the execution of this Agreement and such additional Monthly Fees on each monthly anniversary of the date hereof during the term of PJSC's engagement hereunder.

    (b) In the event of a Restructuring Transaction, a transaction fee (the "Restructuring Transaction Fee") in an amount equal to $1,500,000. The Restructuring Transaction Fee shall be payable upon the execution of a restructuring of the Company's Senior Bank Debt and Trade Debt embodying the closing of the Restructuring Transaction.

    (c) In the event of a Financing Transaction, one or more transaction fees (the "Financing Transaction Fee") in an amount equal to the following percentages of the gross proceeds of any Financing:

| If Capital Raised in the Form of | Financing Transaction Fee Percentage |
| --- | --- |
| Senior Secured Debt | 1.00% |
| Debt Junior to the Secured Bank Debt | 3.00% |
| Equity | 5.00% |

New loans or commitments provided by the existing banks will not be subject to a Financing Transaction Fee.

    (d) In the event of a Sale Transaction, a transaction fee (the "Sale Transaction Fee") equal to the applicable percentage, as set forth on Exhibit B hereto, of the Aggregate Consideration (as defined below) paid or payable in connection with a Transaction.

The Sale Transaction Fee shall be contingent upon the consummation of a Sale Transaction and shall be payable at the closing thereof, provided that compensation attributable to that part of Aggregate Consideration which is contingent upon the realization of future financial performance (e.g. an earn-out or similar provision) shall be paid by the Company to PJSC promptly upon the receipt of such Aggregate Consideration by the Company, its shareholders or other parties. Compensation attributable to that part of Aggregate Consideration which is deferred (including without limitation any Aggregate Consideration held in escrow) shall be valued at the total stated amount of such consideration without applying a discount thereto and shall be paid by the Company at the closing of a Sale Transaction.

For purposes hereof, the term "Aggregate Consideration" shall mean the total amount of all cash, securities, contractual arrangements (including any lease arrangements or put or call agreements) and other properties paid or payable, directly or indirectly in connection with a Sale Transaction (including, without limitation, amounts paid (i) pursuant to covenants not to compete, employment contracts, employee benefit plans, management fees or other similar arrangements, and (ii) to holders of any warrants, stock purchase rights or convertible securities of the Company and to holders of any options or stock appreciation rights issued by the Company, whether or not vested). Aggregate Consideration shall also include the amount of any short-term debt and long-term liabilities of the Company (including the principal amount of any indebtedness for borrowed money and capitalized leases and the full amount of any off-balance sheet financings) (x) repaid or retired in connection with or in anticipation of a Sale Transaction or (y) existing on the Company's balance sheet at the time of a Sale Transaction (if such Sale Transaction takes the form of a merger, consolidation or a sale of stock or partnership interests) or assumed in connection with a Sale Transaction (if such Sale Transaction takes the form of a sale of assets). For purposes of calculating the amount of revolving credit debt in the preceding sentence, the arithmetic mean of the amount of revolving credit debt outstanding on the last day of each month during the 12 months preceding the closing of the Sale Transaction will be used. In the event such Sale Transaction takes the form of a sale of assets, Aggregate Consideration shall include (i) the value of any current assets not purchased, minus (ii) the value of any current liabilities not assumed. In the event such Sale Transaction takes the form of a recapitalization, restructuring, spin-off, split-off or similar transaction, Aggregate Consideration shall include the fair market value of (i) the equity securities of the Company retained by the Company's security holders following such Sale Transaction and (ii) any securities received by the Company's security holders in exchange for or in respect of securities of the Company following such Sale Transaction (all securities received by such security holders being deemed to have been paid to such security holders in such Sale Transaction). The value of securities that are freely tradable in an established public market will be determined on the basis of the last market closing price prior to the consummation of a Sale Transaction. The value of securities, lease payments and other consideration that are not freely tradable or have no established public market, or if the consideration utilized consists of property other than securities, the value of such property shall be the fair market value thereof as determined in good faith by PJSC,

provided, however, that all debt securities shall be valued at their stated principal amount without applying a discount thereto.

In addition to the fees provided above, and as more fully set forth in Section 5 below, the Company shall reimburse PJSC for its out-of-pocket expenses and pay to PJSC the customary hourly fees charged by PJSC for each hour that a PJSC employee shall be required to testify (or be available on site to testify) in any court, arbitration or administrative proceedings, or in oral depositions, in connection with any such proceedings relating to or arising out of PJSC's engagement hereunder. However, no payment of hourly fees will be required for testimony regarding a sale of the Company's assets under Section 363 of the United States Bankruptcy Code.

Section 4.    Credit.  PJSC shall credit 100% of up to a maximum of the first six months of fees paid to PJSC under Section 3(a) above toward any fee payable under Sections 3(b), 3(c) and 3(d).

Section 5.    Expenses.    Without in any way reducing or affecting the provisions of Exhibit A hereto, the Company shall reimburse PJSC for its reasonable, out-of-pocket expenses incurred in connection with the provision of services hereunder. Additionally, the Company shall reimburse PJSC for the fees, disbursements and other charges of PJSC's outside counsel. Out-of-pocket expenses also shall include, but not be limited to, overnight travel and lodging, communication charges, research and courier services. The Company shall promptly reimburse PJSC upon presentation of an invoice or other similar documentation; provided, however, that the incurrence of any single out-of-pocket expense or disbursement pursuant hereto of an amount in excess of $2,500 shall be pre-approved by the Company.

Section 6.    Indemnity and Other Rights. The Company agrees to the provisions of Exhibit A hereto, which is an integral part of this Agreement and the terms of which are incorporated by reference herein.  Such Exhibit A shall survive any termination, expiration or completion of PJSC's engagement hereunder.

Section 7.    Term.

The term of this Agreement shall extend from the date hereof for a period of two months and shall continue thereafter on a month-to-month basis; provided that (i) either the Company or PJSC may terminate this Agreement upon 30 days notice delivered in writing; (ii) upon termination, PJSC shall be entitled to any fees for any monthly period which are due and owing to PJSC upon the effective date of termination, such amounts to be pro-rated for any incomplete monthly period of service; (iii) termination of PJSC's engagement hereunder shall not affect the Company's continuing obligations under Section 7 and Exhibit A hereof; (iv) PJSC shall be entitled to its full fees under Section 3 hereof in the event that any Transaction is consummated at any time prior to the expiration of one year after such termination, or a letter of intent or definitive agreement with respect to any Transaction is executed at any time prior to one year after such termination (which letter of intent or definitive agreement subsequently results in the

consummation of such Transaction at any time); and (v) termination of PJSC's engagement hereunder shall not affect the Company's obligation to reimburse the expenses accruing prior to such termination to the extent provided for in Section 4.

Section 8.    Miscellaneous.

(a)    The advice (oral or written) rendered by PJSC pursuant to this Agreement is intended solely for the benefit and use of senior management of the Company and the Board in considering the matters to which this Agreement relates, and the Company agrees that such advice may not be relied upon by any other person, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose except as required by law nor shall any public references to PJSC be made by the Company without the prior written consent of PJSC which shall not be unreasonably withheld.

(b)    The Company agrees that PJSC shall have the right after completion of a Transaction, subject to the Company's approval not to be unreasonably withheld, to place advertisements in financial and other newspapers and journals at its own expense describing its services hereunder.

(c)    This Agreement may not be amended, waived or modified except by a writing executed by each of the parties and this Agreement, including all controversies arising from or relating to performance under this Agreement, shall be governed by and construed in accordance with the laws of the State of New York, without giving effect such state's rules concerning conflicts of law.    The provisions of this Agreement, including without limitation the obligation to make the payments set forth in Section 3, shall be binding on the Company and its successors and assigns.

(d)    Any lawsuits with respect to, in connection with or arising out of this Agreement shall be brought in a court for the Southern District of New York and the parties hereto consent to the jurisdiction and venue of such court for the Southern District as the sole and exclusive forum, unless such court is unavailable, for the resolution of claims by the parties arising under or relating to this Agreement.    The parties hereto further agree that proper service of process on a party may be made on any agent designated by such party located in the State of New York.

(e)    To the extent permitted by applicable law, each of the Company and PJSC hereby waives trial by jury in any lawsuit with respect to, in connection with or arising out of this Agreement, or any other claim or dispute relating to the engagement of PJSC arising between the parties hereto.    Each of the Company and PJSC hereby confirms that the foregoing waiver is informed and freely made.

(f)    The relationship of PJSC to the Company hereunder shall be that of an independent contractor and PJSC shall have no authority to bind, represent or otherwise act as agent for the Company.

*        *        *

If the foregoing correctly sets forth the understanding and agreement between PJSC and the Company, please so indicate by signing the enclosed copy of this letter, whereupon it shall become a binding agreement between the parties hereto as of the date first above written.

Very truly yours,

PETER J. SOLOMON COMPANY, L.P.

By: Peter J. Solomon Company Limited,
    Its General Partner

By:_____
    Bradley I. Dietz
    Managing Director

PETER J. SOLOMON SECURITIES COMPANY LIMITED

By:_____
    Bradley I. Dietz
    Managing Director

Accepted and Agreed to as of
the day first written above:

M. FABRIKANT & SONS

By:_____
    Michael Shaffet
    Chief Operating Officer

Exhibit A

The Company shall indemnify and hold harmless PJSC and its affiliates, counsel and other professional advisors, and the respective directors, officers, controlling persons, agents and employees of each of the foregoing (PJSC and all of such other persons collectively, the "Indemnified Parties"), from and against any losses, claims or proceedings including stockholder actions, damages, judgments, assessments, investigation costs, settlement costs, fines, penalties, arbitration awards, other liabilities, costs, fees and expenses (collectively, "Losses") (i) related to or arising out of (A) oral or written information provided by the Company, the Company's employees or other agents, which either the Company or PJSC provides to any persons, or (B) other action or failure to act by the Company, the Company's employees or other agents of PJSC at the Company's request or with the Company's consent, or (ii) otherwise related to or arising out of the engagement of PJSC under this agreement or any transaction or conduct in connection therewith, provided that this clause (ii) shall not apply if it is finally judicially determined by a court of competent jurisdiction that such Losses arose solely out of the gross negligence or bad faith of such Indemnified Party. If multiple claims are brought against an Indemnified Party in an arbitration, with respect to at least one of which indemnification is permitted under applicable law and provided for under this agreement, the Company agrees that any arbitration award shall be conclusively deemed to be based on claims as to which indemnification is permitted and provided for, except to the extent the arbitration award expressly states that the award, or any portion thereof, is based solely on a claim as to which indemnification is not available.

The Company shall further reimburse any Indemnified Party promptly for, or at the Indemnified Party's option advance amounts sufficient to cover, any legal or other fees or expenses as they are incurred (i) in investigating, preparing or pursuing any action or other proceeding (whether formal or informal) or threat thereof, whether or not in connection with pending or threatened litigation or arbitration and whether or not any Indemnified Party is a party (an "Action") and (ii) in connection with enforcing such Indemnified Party's rights under this agreement (including, without limitation, its rights under this Exhibit A); provided, however, that in the event it is finally judicially determined by a court of competent jurisdiction that the Losses of such Indemnified Party arose solely out of the gross negligence or bad faith of such Indemnified Party, such Indemnified Party will promptly remit to the Company any amounts reimbursed or advanced under this paragraph.

The Company shall, if requested by PJSC, assume the defense of any such Action including the employment of counsel reasonably satisfactory to PJSC and will not settle, compromise, consent or otherwise resolve or seek to terminate any pending or threatened Action (whether or not any Indemnified Party is a party thereto) unless it obtains the prior written consent of PJSC or an express, unconditional release of each Indemnified Party from all liability relating to such Action and the engagement of PJSC under this agreement. Any Indemnified Party shall be entitled to retain separate counsel of its choice and participate in the defense of any Action in connection with any of the matters to which this Exhibit A relates, but the fees and expenses of such counsel shall be at the expense of such Indemnified Party unless: (i) the Company has failed promptly to assume the defense and employ counsel or (ii) the named parties to any such Action (including any impleaded parties) include such Indemnified Party and the Company, and such Indemnified Party shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or in addition to those available to the Company; provided that the Company shall not in such event be responsible under this Exhibit A for the fees and expenses of more than one firm of separate counsel (in addition to local counsel) in connection with any such Action in the same jurisdiction.

The Company agrees that if any right of any Indemnified Party set forth in the preceding paragraphs is finally judicially determined to be unavailable (except by reason of the gross negligence or bad faith of such Indemnified Party), or is insufficient to hold such Indemnified Party harmless against such Losses as contemplated herein, then the Company shall contribute to such Losses (i) in such proportion as is appropriate to reflect the relative benefits received by the Company and its stockholders, on the one hand, and such Indemnified Party, on the other hand, in connection with the transactions contemplated hereby, and (ii) if (and only if) the allocation provided in clause (i) is not permitted by applicable law, in

such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) but also the relative fault of the Company and such Indemnified Party; provided, however, that in no event shall the amount, if any, to be contributed by all Indemnified Parties exceed the amount of the fees actually received by PJSC hereunder. Benefits received (or anticipated to be received) by the Company and its stockholders shall be deemed to be equal to the aggregate cash consideration and value of securities or any other property payable, exchangeable or transferable in any proposed or potential transactions within the scope of this agreement, and benefits received by PJSC shall be deemed to be equal to the compensation payable by the Company to PJSC in connection with this agreement. Relative fault shall be determined by reference to, among other things, whether any alleged untrue statement or omission or any other alleged conduct relates to information provided by the Company or other conduct by the Company (or the Company's employees or other agents) on the one hand or by PJSC on the other hand. The parties hereto agree that it would not be just and equitable if contribution were determined by pro rata allocation or by any other method of allocation that does not take into account the equitable considerations referred to above.

The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with advice or services rendered or to be rendered by any Indemnified Party pursuant to this agreement, the transactions contemplated hereby or any Indemnified Party's actions or inactions in connection with any such advice, services or transactions except for Losses of the Company that are finally judicially determined by a court of competent jurisdiction to have arisen solely out of the gross negligence or bad faith of such Indemnified Party in connection with any such advice, actions, inactions or services.

The rights of the Indemnified Parties hereunder shall be in addition to any other rights that any Indemnified Party may have at common law, by statute or otherwise. Except as otherwise expressly provided for in this Exhibit A, if any term, provision, covenant or restriction contained in this Exhibit A is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this agreement all remain in full force and effect and shall in no way be affected, impaired or invalidated. The reimbursement, indemnity and contribution obligations of the Company set forth herein shall apply to any modification of this agreement and shall remain in full force and effect regardless of any termination of, or the completion of any Indemnified Party's services under or in connection with, this agreement.

EXHIBIT B

## FEE SCHEDULE (SELL-SIDE)

| Aggregate Consideration | Fee Percentage |
|---|---|
| Below $50.0 million | Min. Transaction Fee of $1,000,000 |
| $50.0 million | 2.250% |
| $100.0 million | 2.000% |
| $200.0 million | 1.500% |
| $300.0 million | 1.250% |
| Above $300.0 million | To be Agreed Upon |

The applicable M&A Transaction Fee percentage for Aggregate Consideration amounts which fall between the amounts listed above shall be calculated based on a straight line interpolation of the percentages in the fee schedule. In the event that the Company sells assets in more than one M&A Transaction, Aggregate Consideration shall be calculated for each M&A Transaction separately and shall not be cumulative for the purposes of determining the M&A Transaction Fee percentage.

# EXHIBIT B

# STEIN AFFIDAVIT

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
| M. FABRIKANT & SONS, INC. and | : | Case No. 06-_____ (___) |
| FABRIKANT – LEER INTERNATIONAL, LTD. | : |  |
| Debtors. | : | (Jointly Administered) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## AFFIDAVIT OF JOSEPH C. STEIN, III IN SUPPORT OF EMPLOYMENT AND RETENTION OF PETER J. SOLOMON COMPANY

STATE OF NEW YORK   )
                        ) ss.:
COUNTY OF NEW YORK )

     I, **Joseph C. Stein, III**, of full age and being sworn according to law, do hereby affirm and say:

     1.     I am a Managing Director of the firm of Peter J. Solomon Company ("PJSC"), a professional services firm with offices located at 520 Madison Avenue New York, NY 10022. I am duly authorized to make this affidavit on behalf of PJSC. Unless otherwise stated in this Affidavit, I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify competently thereto.[1]

     2.     I submit this Affidavit in support of the motion ("Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") seeking entry of an order authorizing employment and retention of PJSC as financial advisors to the Debtors, nunc

---

[1]   Certain of the disclosures set forth herein relate to matters within the knowledge of other professionals at PJSC and are based on information provided by them.

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

*pro tunc,* to the Petition Date under sections 327(a) and 1103(a) of title 11, United States Code (the "Bankruptcy Code"), and rules 2014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules) and rule 2014-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Bankruptcy Rules").

3.      PJSC is a leading independent financial advisory firm headquartered in New York City. Founded in 1989, PJSC provides owners, chief executives and key stakeholders of public and private companies with strategic and financial advice that generally results in a financial transaction. PJSC has successfully completed more than 250 strategic and financial advisory assignments totaling over $50 billion. PJSC's clients represent industry leaders in retail, wholesale and catalogue distribution; branded and unbranded consumer products; health care; pulp and paper; and media and industrial products. PJSC is led by Founder and Chairman Peter J. Solomon, whose career spans more than 35 years in the financial advisory business. Its eleven Managing Directors and four Senior Advisors have extensive experience in a variety of disciplines, including strategic analysis, mergers, acquisitions, financings, recapitalizations, restructurings and principal investments as well as accounting. PJSC professionals have assisted and advised (including providing restructuring advice) to debtors, creditors, creditors' committees, bondholders, investors, and others in numerous bankruptcy cases such as Mirant Corporation, Calpine Corporation, Owens Corning, Armstrong World Industries, Inc., Portrait Corporation of America, Syratech Corporation, and Northwest Airlines Corporation.

4.      Since its retention by the Debtors, PJSC has become familiar with the Debtors' businesses and financial affairs and are therefore particularly qualified to serve as the Debtors' financial advisors in these chapter 11 reorganizations. PJSC has therefore agreed to provide financial advisory services to the Debtors pursuant to the engagement letter between the Debtors

-3-

dated August 24, 2006 (the "Engagement Letter"), a copy of which attached as Exhibit to the Motion. The services that PJSC will render to the Debtors in these chapter 11 cases include the following:

(a) PJSC will familiarize itself to the extent it deems appropriate and feasible with the business, operations, properties, financial condition and prospects of the Company, and, to the extent relevant, any prospective Buyer, it being understood that PJSC shall, in the course of such familiarization, rely entirely upon such information as may be supplied by the Company or other relevant parties, including such Buyer and the Company's counsel, without assuming any responsibility for independent investigation or verification thereof;

(b) PJSC will assist the Company in the preparation of descriptive information concerning the Company, based upon information provided by the Company, the reasonableness, accuracy and completeness of which information PJSC will not be required to investigate and about which PJSC will express no opinion;

(c) PJSC will review and analyze the business plans and financial projections prepared by the Company;

(d) PJSC will evaluate the Company's liquidity needs, potential debt capacity and capitalization based on the Company's projected earnings and cash flows;

(e) PJSC will assist the Company with developing various financial models and projections to be used in conjunction with a Transaction3;

(f) PJSC will assist the Company with developing and presenting various reporting and informational requirements as may be required from time to time by its Senior Bank Debt holders;

(g) PJSC will advise and assist the Company in identifying and contacting potential Transaction sponsors;

(h) PJSC will assist the Company in conducting presentations and due diligence meetings with prospective Transaction sponsors;

(i) PJSC will advise and assist the Company in developing a general strategy for accomplishing a Transaction, as well as its form and structure;

---

All capitalized terms as they relate to PJSC's duties and functions have the meanings ascribed to them in the Engagement Letter.

(j)      PJSC will periodically advise the Company as to the status of dealings with any parties involved in a Transaction and will advise and assist the Company in the course of its negotiations, execution and closing of any Transaction;

(k)      PJSC will advise and assist management of the Company in making presentations to the Company's Board of Directors concerning general strategy and any proposed Transaction;

(l)      PJSC will participate as an advisor to the Company in negotiating and implementing a Transaction;

(m)     PJSC will render such other financial advisory services as may from time to time be agreed upon by PJSC and the Company.

The terms and conditions of the Engagement Letter were heavily negotiated between the Debtors and PJSC, and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement. As is customary in similar engagements, both in and out of bankruptcy, the Engagement Letter provides for PJSC to receive a monthly fee and reimbursement of all of PJSC's reasonable costs and expenses incurred in connection with providing services to the Debtors. Taking into account the highly complex nature of this engagement, the terms contained in the Engagement Letter are similar to the terms agreed to by PJSC and other financial advisory firms in similar restructuring engagements, both in and outside of bankruptcy.

PJSC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code. Although, Bradley I. Dietz, a Managing Director of PJSC, was and is a board member of non-party Friedman's Inc. ("Friedman's"), Friedman's does not hold a "claim" against the debtors as that term is defined under the Bankruptcy Code. While Friedman's was one of the Debtors' largest prepetition customers, PJSC represents that Friedman's currently does not hold any claim against the Debtors or their respective estates within the meaning of the

-5-

Bankruptcy Code. As Friedman's holds no such cognizable claim, PJSC believes it does not hold an interest "adverse" to the Debtors' or their estates.

7. Furthermore, PJSC is a "disinterested person" as its principals, associates and employees

(a) are not creditors, equity security holders or insiders of the Debtors;

(b) are not and were not, within 2 years before the Petition Date, directors, officers, or employees of the Debtors; and

(c) do not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors or for any other reason.

8. Moreover, to the best of my knowledge, information and belief formed after reasonable inquiry, PJSC, its professionals and employees have no interests that are materially adverse to the Debtors' estates, or the creditors in these Chapter 11 Cases.

9. To determine PJSC's relationship with the parties-in-interest identified by the Debtors to PJSC, in preparing this Affidavit, I caused the names of the parties set forth in Exhibit B-1, which is attached hereto, to be subjected to PJSC's internal conflicts procedures. To the best of my knowledge, information and belief, neither I nor any other partner, principal, advisor, associate, analyst or staff person of PJSC has any connection with or holds any interest adverse to the Debtors, their estates, creditors, shareholders, or any other party in interest herein or their respective attorneys in the matters for which PJSC is proposed to be retained. Accordingly, PJSC neither has any connection nor holds an adverse interest to the Debtors, their estates, creditors or any other party in interest.

10.     To the extent I discover any facts bearing on the matters described herein during the period of the Debtors retention of PJSC, I will supplement the information contained in this Affidavit.

11.     Other than the aforementioned retention of PJSC, to the best of my knowledge, PJSC has not been retained to assist any entity or person other than the Debtors on matters relating to, or in connection with, these chapter 11 cases. If this Court approves the proposed employment of PJSC by the Debtors, then PJSC will not accept any engagement or perform any service in these cases for any entity or person other than the Debtors.

12.     I am not related or connected to and, to the best of my knowledge, no other professional of PJSC is related or connected to any United States Bankruptcy Judge or District Judge for the Southern District of New York or the United States Trustee for the Southern District of New York or to any employee in the offices thereof.

13.     It is PJSC's policy to charge its clients for all disbursements and expenses incurred in the rendition of services. These disbursements and expenses include, among other things, costs for travel, report preparation, delivery services and other necessary costs incurred in providing services to the Debtors.

14.     Prior to the Petition Date, PJSC was initially retained as financial advisors to the Debtors pursuant to the Engagement Letter. During the period prior to the Petition Date, the Debtors made advance payments to PJSC aggregating $306,486.00 comprised of the following: (i) $300,000 for monthly advisory fees, and (ii) $6,486.00 for reimbursement of out-of-pocket expenses.

-7-

15. PJSC intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules (including any order adopting any guidelines promulgated by the Office of the United States Trustee), the Engagement Letter and any additional procedures that may be established by the Court in these chapter 11 cases. Under the terms of the Engagement Letter, PJSC will be paid a monthly advisory fee of $100,000 per month. No promises have been received by PJSC nor any member or associate thereof as to payment or compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code. Neither PJSC nor any of its financial advisors and restructuring accountants has entered into an agreement or understanding to share compensation as described in Bankruptcy Rule 2016. Because PJSC is compensated on a fixed monthly basis, PJSC should not be required to maintain or provide detailed time records in connection with any of its fee applications.

16. The Debtors require knowledgeable consultants to render these essential professional services. As noted above, PJSC has substantial expertise in all these areas, as well as valuable institutional knowledge of the Debtors' businesses and financial affairs. As a result, PJSC is well qualified to perform these services and represent the Debtors' throughout their chapter 11 reorganizations.

17. The Debtors believe that PJSC's employment is in the best interests of their estates and creditors. Because of PJSC's experience in business reorganizations and mergers and acquisitions as well as its familiarity with the Debtors' business operations, the Debtors believe that PJSC is exceptionally well qualified to serve as their financial advisors in their chapter 11 cases.

18. The foregoing constitutes the statement of PJSC pursuant to sections 504 and 1103 of the Bankruptcy Code, Bankruptcy Rules 2014(a), 2016(b) and Local Rule 2014-1.

_____
Joseph C. Stein, III

Sworn to before me this
17th day of November, 2006

_____
Notary Public, State of New York

HARRIET E. COHEN
Notary Public, State of New York
No. 01CO5027732
Qualified in Queens County
Certificate Filed in New York County
Commission Expires May 16, 2010

# SCHEDULE B-1

# M. Fabrikant and Sons, Inc.

## Conflict Check

### Debtors
M. Fabrikant and Sons, Inc.
Fabrikant – Leer International

### Board of Directors & Officers
Chuck Fortgang
Marjorie Fortgang
Matthew Fortgang
Shelley Ginsberg
Michael Shaffett
Chad Shandler

### Bank Creditors
ABN-AMRO
Antwerp Diamond Bank
Banca Toscana
Bank Leumi
Bank of America
Bank of Asia
Bank Thai
Cassa Risparimo Firenze
Citibank
Dai-Ichi Kangyo
Export/Import Bank of Thailand
HSBC
Israeli Discount Bank
JP Morgan Chase
Kasikorn Thai Bank
Sovereign Bank
State Bank of India
Union Bank
Valley National

### Other Professional Firms
Arent Fox PLLC
Getzler Henrich & Associates, LLC
Hahn & Hessen LLP
Troutman Sanders LLP

# M. Fabrikant and Sons, Inc.

## Conflict Check

**Affiliated Entities**
Alpha Diamond Co., Inc.
AM-Gold Products, Inc.
Aresco, Inc.
Brilliant Trading Company, LLC
C. Fabrikant (H.K.) & Company Ltd.
Clover Corporation
CRP Jewellry Thailand Ltd.
D.M.P. Company Limited
Diamfab PVBA
Diamond Mounting, Inc.
Fab-Oro Italy
Fabrikant & Salant Co., Inc.
Fabrikant Hong Kong Ltd.
Fabrikant Hong Kong Trading Ltd.
Fabrikant Japan Inc.
Fabrikant Thailand
Fabrikant Trading (India) Pvt. Ltd.
Fabrikant-Commonweath Trading, Inc.
Fabrikant-Tara International, LLC
Fancy Diamonds Trading Co. (Israel) Ltd.
Fancy Trading Company, LLC
Fifth Avenue Group, LLC
FTK International Ltd. Mauritius
FTK Worldwide Manufacturing  BVBA
FTK Worldwide Manufacturing (Asia) Ltd.
Lagos Holdings, Inc.
Leer Tokyo Pearl
Robert Lee Morris, Inc.
Rough Gemstone Trading Co., Ltd.
Royal Asscher Cut, LLC
S.H.R. Inc.
Scott Diamond Co. Inc.
Scott Kay Inc.
Scott Kay Sterling, LLC
Simmons Jewelry Company, LLC
SoFaSa LLC
T. Two International
Tara Jewels Export Private Ltd.
Tara Ultimo
Tiger Group International, Inc.

-2-

Troy Kay
Vision, Solutions, Impact, LLC

# M. Fabrikant and Sons, Inc.

## Conflict Check

**Top 20 Unsecured Creditors**
Asian Star Co. Ltd.
Bhavani Gems
Blue Star
Bluerays, Inc.
Chaim Ausch Diamonds
Dhanraj Dhadda Exports
Diashine Exports
Disons Gems, Inc.
Ema
Enlink, Inc.
H. Dipak & Co
Impex Diamonds
K P Sanghvi & Sons
K. G. K. Enterprises
K. Girdharlal International Pvt Ltd.
Kiran Exports
Laxmi Diamond
M.,Suresh
Schain Leifer Guralnick
Shree Ramkrishna Export

NEWYORK01 1152212v3 357032-000090

# EXHIBIT C

# ORDER

-4-

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                            :

In re                          :      Chapter 11
                            :

M. FABRIKANT & SONS, INC. and    :      Case No. 06-_____ (____)
FABRIKANT – LEER INTERNATIONAL, LTD. :
              Debtors.     :      (Jointly Administered)
                            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## ORDER, PURSUANT TO SECTION 327(a) OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 2014(a) AND LOCAL BANKRUPTCY RULE 2014-1, AUTHORIZING THE DEBTORS' RETENTION AND EMPLOYMENT OF PETER J. SOLOMON COMPANY, *NUNC PRO TUNC*, AS OF THE PETITION DATE

This matter coming before the Court on the motion of debtors and debtors in possession Pursuant to Sections 327(a) of title 11, United States Code, (the "Bankruptcy Code"), rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 2014-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules") Authorizing the Debtors' Retention and Employment of Peter J. Solomon Company ("PJSC"), Nunc Pro Tunc as of the Petition Date (the "Motion"),[1] filed by the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"); the Court having reviewed the Motion, the Affidavit of Joseph C. Stein, III in support thereof and having considered the statements of counsel and the evidence adduced with respect to the Motion at a hearing before the Court on the Motion (the "Hearing"); and the Court having found that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (c) notice of the Motion and the Hearing was sufficient under the circumstances, (d) in light of the circumstances, the requirements of

---

[1] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

... Bankruptcy Rule 9013-1(b) that a separate memorandum of law be filed in support of the ... is waived, (e) PJSC does not hold or represent any interest adverse to the Debtors' ... is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code and ... by section 327 of the Bankruptcy Code and (f) the Motion and all related papers fully ... with the Bankruptcy Code, Bankruptcy Rules and the Local Bankruptcy Rules; and the ... having determined that the legal and factual bases set forth in the Motion, the Affidavit, ... hearing establish just cause for the relief granted herein;

... HEREBY ORDERED THAT:

... The Motion is hereby GRANTED.

... The Debtors are authorized to retain and employ PJSC as their financial advisors ... with their chapter 11 cases, pursuant to section 327(a) of the Bankruptcy Code and ... Rule 2014(a), on the terms and conditions set forth in the Motion and the ... Letter, _nunc pro tunc_ as of the Petition Date.

... PJSC shall be compensated for its services and reimbursed for any related ... in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy ... the Local Bankruptcy Rules and the Engagement Letter[2] any other applicable orders or ... of this Court. PJSC shall disclose in its monthly invoices and fee applications a ... of the nature of post-petition services performed for; and the amount of any ... sought and received from, any of the Debtors.

---

... Attached to the Motion as Exhibit A.

NEW YORK01 1152212v3 357032-000090

(d)    PJSC shall be permitted to provide general summaries of tasks and hours in connection with its fee applications.

(e)    To the extent that this Order is inconsistent with the Engagement Letter, the terms of this order shall govern.

Dated: New York, New York
            _____, 2006


                                        _____
                                        UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT E**
**Professionals' Biographies**

# PJSC Professionals' Biographies

**Bradley Dietz – Managing Director**
Bradley Dietz, with over 15 years of financial restructuring experience, is a Managing Director and co-heads PJSC's Restructuring Group. Since joining the firm in 2001, Mr. Dietz has led a variety of engagements including Owens Corning, Armstrong World Industries, Oneida Ltd., Warnaco Group, Hayes Lemmerz and Syratech Corp. as well as ALPA units at several major airlines.

Prior to joining the firm in 2001, he was a Managing Director at Citigroup where over a ten-year period he had broad based experience in complex restructuring and reorganization matters across a variety of industries.

*Previously Held Positions*
Managing Director, Citigroup
Vice President, Bankers Trust Company
Chief Operating Officer, Metrotape Division, Metromedia, Inc.

*Directorships*
First Capital Holdings Liquidation Trust
Pillowtex, Inc.
Friedman's Jewelers

*Academic Credentials*
Mr. Dietz received his M.B.A. from the University of California at Los Angeles, where he also received his B.A., graduating Phi Beta Kappa, magna cum laude.


**Joseph Stein – Managing Director**
Joseph Stein is a Managing Director of PJSC and actively involved in all three of the firm's functional areas of mergers and acquisitions, financing and restructuring. He has worked extensively across a variety of industry sectors including consumer products, retail, distribution and general industrial.

Mr. Stein joined PJSC in 2001 from UBS Warburg LLC where he served as Executive Director in the firm's investment banking department.

With over fifteen years of experience in investment banking, Mr. Stein has expertise in mergers and acquisitions, financial restructurings and various capital markets including public and private debt and equity, loan syndication and securitization.

*Academic Credentials*
Mr. Stein received an M.B.A. from William E. Simon Graduate School of Business Administration at the University of Rochester and a B.A. from Hobart College.

**Daniel Wallitt – Associate Director**
Daniel Wallitt is an Associate Director in the Restructuring Group and joined the firm in 2005. Mr. Wallitt has extensive experience in the retail, software, manufacturing and energy industries. Recent engagements include Armstrong World Industries, Owens Corning, Movie Gallery, Alliance One International, PCA, Inc. and Friedman's Jewelers.

Prior to joining PJSC, Mr. Wallitt spent three years at Seneca Financial Group, a boutique restructuring advisory firm. At Seneca, Mr. Wallitt's selected engagements included Levitz Home Furnishings, Seitel, Peregrine Systems, Bush Industries and NorthWestern Corporation. Prior to attending business school, Mr. Wallitt worked in PricewaterhouseCoopers' management consulting practice and at The Lewin Group, a healthcare consulting firm.

*Previously Held Positions*
Vice President, Seneca Financial Group
Consultant, PricewaterhouseCoopers
Research Analyst, The Lewin Group

*Academic Credentials*
Mr. Wallitt received his M.B.A. degree with honors from Columbia Business School and his B.S. degree from Cornell University.

# EXHIBIT F
## Monthly Fee Statements



**PETER J.
SOLOMON
COMPANY**

520 Madison Avenue
New York, New York 10022

TEL: 212.508.1600
FAX: 212.508.1633
info@pjsolomon.com

February 6, 2007

M. Fabrikant & Sons, Inc.
One Rockefeller Plaza
New York, NY  10020

Attention:   Michael Shaffet
             Chief Operating Officer
Re:          06-12737-(SMB)

    Pursuant to the Order Establishing Procedures for Interim Monthly Compensation of Professionals (the "Order") entered on January 8, 2007, enclosed please find Peter J. Solomon Company's statement of fees and expenses for the period November 24, 2006 through January 23, 2007 (the "Fee Statement").  The amounts due are set forth on the following page.

    Please contact me if you have any questions.

    Thank you very much for your consideration.

Very truly yours,

Joseph Stein
Managing Director

Enclosure

cc:   Alan Kolod, Esq. (w/Encl.)
      Alicia Leonhard, Esq. (w/Encl.)
      Jeffrey L Schwartz, Esq. (w/Encl.)
      Mitchel H. Perkiel, Esq. (w/Encl.)
      David Feldman, Esq. (w/Encl.)



PETER J
SOLOMON
COMPANY

520 Madison Avenue
New York, New York 10022

TEL: 212.508.1600
FAX: 212.508.1633
info@pjsolomon.com

January 29, 2007

M. Fabrikant & Sons, Inc.
One Rockefeller Plaza
New York, NY 10020

Attention:    Michael Shaffet
              Chief Operating Officer

### INVOICE

| | | |
|---|---:|---:|
| Advisory fee for the two month period beginning November 24, 2006 through January 23, 2007 per Engagement Letter dated August 24, 2006, $100,000 per month: | | $200,000.00 |
| Less fee holdback amount, 20% | | 40,000.00 |
| Fee amount due | | 160,000.00 |
| Out-of-pocket expenses for the period October 15, 2006 through January 23, 2007: | | |
| Research, printing and data processing | $2,094.86 | |
| Catered meetings, late meals, late taxis | 2,717.79 | |
| Legal | 960.00 | |
| Delivery, postage, conference calls and other communications | 2,451.78 | 8,224.43 |
| **Total amount due** | | **$168,224.43** |

*Please remit funds in U.S. dollars by wire transfer to:*

Bank of America
1185 Avenue of the Americas
New York, NY 10036
**ABA # 026 009 593  (for ACH use 021 000 322)**
For further credit to:  **Peter J. Solomon, L.P.**
              **Account number 94292 62215**

# M. Fabrikant & Sons - Summary of Hours

## Month Ending December 23, 2006

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Joe Walter | 11/17/2006 | 2.50 | Business Analysis | Review and discuss liquidation analysis with professionals |
| Dan Wallitt | 11/17/2006 | 1.50 | Business Analysis | Review and discuss liquidation analysis with professionals |
| Brad Dietz | 11/20/2006 | 3.00 | Business Analysis | Meeting at Company re: liquidation analysis and process |
| Joe Stein | 11/20/2006 | 3.00 | Client Update | Meeting at Company re: liquidation analysis and process |
| Joe Walter | 11/20/2006 | 4.00 | Business Analysis | Prepared analysis of affiliate companies with Mike Shaffet |
| Dan Wallitt | 11/20/2006 | 1.50 | Business Analysis | Review analysis of affiliate companies prepared with Mike Shaffet |
| Brad Dietz | 11/21/2006 | 0.75 | Discussion with Potential Buyers | Called potential buyers re: process |
| Brad Dietz | 11/21/2006 | 3.25 | Business Analysis | Discussion with company on valuation and liquidation analysis |
| Joe Walter | 11/21/2006 | 6.00 | Business Analysis | Prepared analysis of affiliate companies and liquidation values |
| Brad Dietz | 11/21/2006 | 6.00 | Business Analysis | Discussion with company on valuation and liquidation values |
| Joe Walter | 11/22/2006 | 6.00 | Business Analysis | Prepared analysis of affiliate companies and liquidation analysis |
| Joe Stein | 11/22/2006 | 3.50 | Discussion with Potential Buyers | Conference calls with Chrysalis to discuss process |
| Joe Stein | 11/22/2006 | 2.00 | Discussion with Potential Buyers | Internal team meetings re: CCP discussions |
| Dan Wallitt | 11/22/2006 | 3.50 | Discussion with Potential Buyers | Conference calls with Chrysalis to discuss process |
| Dan Wallitt | 11/22/2006 | 2.00 | Discussion with Potential Buyers | Internal team meetings re: CCP discussions |
| Joe Walter | 11/22/2006 | 1.00 | Business Analysis | Reviewed and revised liquidation analysis |
| Brad Dietz | 11/27/2006 | 0.50 | Client Update | Board call re: liquidation analysis |
| Brad Dietz | 11/27/2006 | 4.50 | Business Analysis | Reviewed and discussed liquidation analysis |
| Joe Walter | 11/27/2006 | 5.00 | Business Analysis | Reviewed and discussed liquidation analysis |
| Stephanie Rose | 11/27/2006 | 0.50 | Discussion with Potential Buyers | Distribution of confidentiality agreements and CIMs to potential buyers |
| Brad Dietz | 11/28/2006 | 0.75 | Business Analysis | Conference call with Mike Shaffet to discuss valuation and liquidation analysis |
| Joe Walter | 11/28/2006 | 0.75 | Business Analysis | Conference call with Mike Shaffet to discuss valuation and liquidation analysis |
| Brad Dietz | 11/28/2006 | 0.50 | Client Update | Conference call with Sue Fabrikant re: process |
| Brad Dietz | 11/28/2006 | 5.00 | Business Analysis | Refinement of business unit and legal entity valuation and analysis |
| Joe Walter | 11/28/2006 | 5.00 | Business Analysis | Refinement of business unit and legal entity valuation and analysis |
| Brad Dietz | 11/29/2006 | 5.00 | Business Analysis | Continue evaluation of liquidation value of entities, repayment of interco obligations; value of affiliates and bank recoveries |
| Joe Walter | 11/29/2006 | 5.00 | Business Analysis | Continue evaluation of liquidation value of entities, repayment of interco obligations; value of affiliates and bank recoveries |
| Stephanie Rose | 11/29/2006 | 1.50 | Discussion with Potential Buyers | Edited and distributed confidentiality agreements to numerous potential buyers |
| Joe Walter | 11/30/2006 | 3.00 | Business Analysis | Continue evaluation of liquidation value of entities, repayment of interco obligations; value of affiliates and bank recoveries |
| Dan Wallitt | 11/30/2006 | 4.50 | Discussion with Potential Buyers | Prep for and discussions with MHR Capital re: process and situation |
| Brad Dietz | 12/1/2006 | 2.50 | Discussion with Potential Buyers | Further discussions with MHR re: process and situation |
| Brad Dietz | 12/1/2006 | 1.00 | Client Update | Conference call with management re: liquidation analysis |
| Brad Dietz | 12/1/2006 | 2.00 | Business Analysis | Review of liquidation analysis |
| Brad Dietz | 12/1/2006 | 0.50 | Discussion with Potential Buyers | Followup with phone inquiries re: M&A process |
| Stephanie Rose | 12/1/2006 | 1.50 | Discussion with Potential Buyers | Edited and distributed confidentiality agreements to numerous potential buyers |
| Brad Dietz | 12/2/2006 | 0.50 | Client Update | Various communications w/S. Fortgang re: process |
| Brad Dietz | 12/4/2006 | 1.75 | Discussion with Potential Buyers | Prep and conference call with management/counsel re: values of affiliates/core business |
| Brad Dietz | 12/4/2006 | 0.50 | Client Update | Call re: status of Chrysalis proposal and options |
| Brad Dietz | 12/4/2006 | 1.00 | Client Update | Conf call (w/Furman and subsequently w/Perkie) re: Farallon/diligence protocol and book to Kornfeld |
| Joe Walter | 12/4/2006 | 2.00 | Business Analysis | Update of projection model summary for review and discussion |
| Joe Stein | 12/4/2006 | 1.50 | Discussion with Potential Buyers | Meeting at MHR re: discussion of process and discussion |
| Dan Wallitt | 12/4/2006 | 1.50 | Discussion with Potential Buyers | Meeting at MHR re: discussion of process and company |
| Stephanie Rose | 12/4/2006 | 0.50 | Client Update | Update of Buyers List for recent contacts |
| Stephanie Rose | 12/4/2006 | 0.50 | Client Update | Facilitated information requests between potential buyers and Company |
| Stephanie Rose | 12/4/2006 | 1.00 | Client Update | Edited and distributed confidentiality agreements to numerous potential buyers |
| Brad Dietz | 12/7/2006 | 2.00 | Creditor Update | Meetings at Company w/Farallon |
| Brad Dietz | 12/7/2006 | 2.00 | Creditor Update | Offer analysis and board update |
| Brad Dietz | 12/7/2006 | 2.00 | Creditor Update | Meeting and discussion w/counsel re: alternatives w/MF and MS |
| Dan Wallitt | 12/7/2006 | 4.50 | Business Analysis | Liquidation analysis discussions with Getzler |
| Dan Wallitt | 12/7/2006 | 2.00 | Business Analysis | Review of liquidation analysis drafts |
| Dan Wallitt | 12/7/2006 | 1.50 | Business Analysis | cConference call with Board re: liquidation analysis |
| Dan Wallitt | 12/8/2006 | 3.50 | Business Analysis | Review and discussions re: liquidation analysis |

# M. Fabrikant & Sons - Summary of Hours

## Month Ending December 23, 2006

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Brad Dietz | 12/8/2006 | 1.00 | Client Update | Conference call w/board re: liquidation analysis |
| Brad Dietz | 12/8/2006 | 1.00 | Client Update | Second conference call w/board re: process |
| Brad Dietz | 12/8/2006 | 3.00 | Business Analysis | Review and valuation of Chrysalis bid |
| Brad Dietz | 12/8/2006 | 2.00 | Business Analysis | Discussions w/Getzer and review of liquidation analysis |
| Stephanie Rose | 12/8/2006 | 0.75 | Client Update | Update of Buyers List for recent contacts |
| Stephanie Rose | 12/8/2006 | 1.00 | Client Update | Facilitated information requests between potential buyers and Company |
| Joe Stein | 12/11/2006 | 1.00 | Client Update | Call with Board of directors re: liquidation analysis and Chrysalis bid |
| Joe Stein | 12/11/2006 | 1.00 | Client Update | Review of liquidation analysis |
| Joe Stein | 12/11/2006 | 2.00 | Client Update | Calls with Chrysalis re: bid and process |
| Joe Stein | 12/12/2006 | 1.00 | Discussion with Potential Buyers | Calls with Davidson Kempner (prospective buyer) re: process |
| Dan Wallitt | 12/13/2006 | 1.50 | Discussion with Potential Buyers | Meeting with Kely Drye, counsel for prospective buyer re: process |
| Brad Dietz | 12/13/2006 | 1.00 | Discussion with Potential Buyers | Calls with MHR, Davidson Kempner & a potential liquidator |
| Brad Dietz | 12/13/2006 | 1.00 | Creditor Update | Call with professionals re: market inquiries |
| Brad Dietz | 12/14/2006 | 0.38 | Client Update | Call w/Mike Shaffel re: Tara status |
| Stephanie Rose | 12/14/2006 | 0.50 | Client Update | Update of Buyers List for recent contacts |
| Stephanie Rose | 12/14/2006 | 1.00 | Creditor Update | Facilitated information requests between potential buyers and Company |
| Brad Dietz | 12/14/2006 | 2.75 | Creditor Update | Prep and conference call re: 12/15 mtg w/bank group |
| Brad Dietz | 12/14/2006 | 0.50 | Creditor Update | Call w/Matthew Fortgang re: bank discussions |
| Brad Dietz | 12/14/2006 | 0.75 | Business Analysis | Review liquidation analysis w/Getzer |
| Dan Wallitt | 12/14/2006 | 0.75 | Business Analysis | Review of liquidation analysis |
| Brad Dietz | 12/15/2006 | 3.00 | Creditor Update | Prep and meeting w/banks re: Chrysalis and guarantees |
| Brad Dietz | 12/15/2006 | 0.50 | Creditor Update | Discussions with various bank desks re: sale of ABN and BofA bank debt |
| Brad Dietz | 12/15/2006 | 0.50 | Discussion with Potential Buyers | Calls to Quadrangle/Davidson Kepner/Venor |
| Brad Dietz | 12/18/2006 | 0.50 | Client Update | Call w/Matthew Fortgang re: bank trades on Fri |
| Brad Dietz | 12/18/2006 | 0.50 | Client Update | Call w/Farallon re: due diligence |
| Brad Dietz | 12/18/2006 | 0.50 | Creditor Update | Call w/Peter Furman re: Farallon due diligence |
| Brad Dietz | 12/18/2006 | 0.50 | Creditor Update | Call to counsel re: liquidation analysis, distribution to various parties |
| Brad Dietz | 12/18/2006 | 1.00 | Creditor Update | Calls w/various investors in response to debt sale on 12/15 |
| Brad Dietz | 12/19/2006 | 0.50 | Creditor Update | Prep and conf call w/Farallon |
| Stephanie Rose | 12/19/2006 | 0.50 | Discussion with Potential Buyers | Update of Buyers List for recent contacts |
| Stephanie Rose | 12/19/2006 | 1.00 | Discussion with Potential Buyers | Facilitated information requests between potential buyers and Company |
| Stephanie Rose | 12/19/2006 | 0.50 | Discussion with Potential Buyers | Edited and distributed confidentiality agreements to numerous potential buyers |
| Brad Dietz | 12/20/2006 | 2.50 | Creditor Update | Calls w/new bank debt holders: Farallon, Canyon, BofA, Chilton re status and bank meeting |
| Brad Dietz | 12/20/2006 | 2.00 | Creditor Update | Prepare for bank mtg on 12/21 |
| Joe Walter | 12/20/2006 | 2.00 | Creditor Update | Preparation for Bank Meeting |
| Stephanie Rose | 12/20/2006 | 2.00 | Creditor Update | Edited and distributed confidentiality agreements to numerous potential buyers |
| Stephanie Rose | 12/20/2006 | 1.00 | Creditor Update | Update of Buyers List for recent contacts |
| Joe Walter | 12/21/2006 | 4.00 | Creditor Update | Preparation for Bank Meeting |
| Dan Wallitt | 12/21/2006 | 4.00 | Creditor Update | Prep and discussion with new bank debt holders |
| Brad Dietz | 12/21/2006 | 2.50 | Business Analysis | Review business plan |
| Brad Dietz | 12/21/2006 | 1.00 | Creditor Update | Discussion with new bank debt holders |
| Brad Dietz | 12/21/2006 | 1.00 | Creditor Update | Follow up calls to Farallon and MS |
| Stephanie Rose | 12/21/2006 | 3.00 | Creditor Update | Prepared and distributed Bank meeting materials and presentation |
| Stephanie Rose | 12/21/2006 | 4.00 | Creditor Update | Prep and discussion with new bank debt holders |
| Stephanie Rose | 12/21/2006 | 3.50 | Business Analysis | Revised and discussed Projection Model with management |
| Stephanie Rose | 12/21/2006 | 1.00 | Discussion with Potential Buyers | Prepared Diligence Request Lists as received from potential buyers |
| Stephanie Rose | 12/21/2006 | 1.00 | Discussion with Potential Buyers | Edited and distributed confidentiality agreements to numerous potential buyers |
| Stephanie Rose | 12/21/2006 | 1.00 | Client Update | Update of Buyers List for recent contacts |
| Brad Dietz | 12/22/2006 | 1.00 | Business Analysis | Meeting w/Mike Shaffel at company re liquidation analysis and business plan |
| Stephanie Rose | 12/22/2006 | 1.00 | Business Analysis | Meeting w/Mike Shaffel at company re liquidation analysis and business plan |
| Dan Wallitt | 12/22/2006 | 1.00 | Business Analysis | Preparation and drafting of new business plan model and presentation |
| Joe Walter | 12/22/2006 | 1.00 | Business Analysis | Meeting w/Mike Shaffel at company re liquidation analysis and business plan |

# M. Fabrikant & Sons - Summary of Hours

## Month Ending December 23, 2006

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Joe Walter | 12/22/2006 | 4.50 | Business Analysis | Preparation and drafting of new business plan model and presentation |
| Stephanie Rose | 12/22/2006 | 2.00 | Business Analysis | Preparation and drafting of new business plan model and presentation |
| Stephanie Rose | 12/22/2006 | 1.00 | Business Analysis | Updated Diligence Request Lists as received from potential buyers |
| Stephanie Rose | 12/22/2006 | 1.00 | Discussion with Potential Buyers | Edited and distributed confidentiality agreements to numerous potential buyers |
| Stephanie Rose | 12/22/2006 | 1.00 | Discussion with Potential Buyers | Facilitated information requests between potential buyers and Company |

| Professional | Hours | Category | Hours |
|---|---|---|---|
| Brad Dietz | 76.38 | Business Analysis | 106.25 |
| Joe Stein | 16.00 | Court Hearing | 0.00 |
| Dan Waillitt | 39.25 | Creditor Update | 43.75 |
| Joe Walter | 47.75 | General Administrative | 0.00 |
| Stephanie Rose | 33.25 | Report / Presentation Preparation | 0.00 |
| | | Discussion with Potential Buyers | 36.25 |
| | | Testimony Preparation | 0.00 |
| | | Travel | 0.00 |
| | | Client Update | 26.38 |
| Total Hours for Month Ending December 23, 2006 | 212.63 | | |

# M. Fabrikant & Sons - Summary of Hours

## Month Ending January 23, 2007

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Joe Walter | 12/26/2006 | 2.00 | Discussion with Potential Buyers | Edited NDAs for potential buyers |
| Joe Walter | 12/26/2006 | 1.50 | Discussion with Potential Buyers | Prepared materials for diligence meeting w/ MS |
| Joe Walter | 12/27/2006 | 4.00 | Business Analysis | Meeting w/Mike Shaffet re: updated projection model |
| Dan Wallitt | 12/27/2006 | 4.50 | Business Analysis | Meeting w/Mike Shaffet re: updated projection model |
| Joe Walter | 12/28/2006 | 3.00 | Business Analysis | Updated projection model based on meeting with MS |
| Joe Walter | 12/28/2006 | 2.00 | Business Analysis | Prepared presentation of model assumptions for discussion an distribution |
| Joe Walter | 12/28/2006 | 1.50 | Business Analysis | Facilitated information requests between potential buyers and Company |
| Dan Wallitt | 12/28/2006 | 2.50 | Business Analysis | Review drafts of updated projection models and presentations |
| Stephanie Rose | 12/29/2006 | 5.50 | Report / Presentation Preparation | Updated and edited presentation of model assumptions |
| Dan Wallitt | 12/30/2006 | 1.50 | Business Analysis | Review drafts of updated projection models and presentations |
| Brad Dietz | 12/30/2006 | 0.25 | Client Update | Calls w/Fortgangs re: status of buyer |
| Brad Dietz | 12/31/2006 | 1.00 | Business Analysis | Discussion with internal team re: status of business plan |
| Joe Walter | 12/31/2006 | 6.50 | Business Analysis | Update revised projection model and lender presentation of model assumptions |
| Brad Dietz | 12/31/2006 | 0.25 | Client Update | Communication w/Fortgangs re: status of buyer |
| Joe Walter | 1/1/2007 | 2.00 | Report / Presentation Preparation | Update revised projection model and lender presentation of model assumptions |
| Brad Dietz | 1/2/2007 | 1.75 | Discussion with Potential Buyers | Call w/counsels to prospective buyer re: POR |
| Brad Dietz | 1/2/2007 | 0.50 | Client Update | Communication w/Fortgangs re: status of buyer |
| Brad Dietz | 1/2/2007 | 3.00 | Client Update | Review revised business plan and projection model |
| Joe Walter | 1/2/2007 | 7.50 | Business Analysis | Review and update projection model and lender presentation |
| Brad Dietz | 1/3/2007 | 4.00 | Client Update | Prep and meet with Company and Getzler re: revised business plan |
| Dan Wallitt | 1/3/2007 | 5.50 | Report / Presentation Preparation | Discussion, editing and preparation of lender presentation |
| Joe Walter | 1/3/2007 | 7.00 | Report / Presentation Preparation | Discussion, editing and preparation of lender presentation |
| Brad Dietz | 1/3/2007 | 1.00 | Discussion with Potential Buyers | Discussion w/counsel to prospective buyer re: process |
| Joe Walter | 1/4/2007 | 5.00 | Report / Presentation Preparation | Preparation of bank meeting materials including business plan and 13 week cash flow |
| Joe Stein | 1/4/2007 | 2.00 | Discussion with Potential Buyers | Discussion w/ prospective buyers and their counsel re: process |
| Dan Wallitt | 1/4/2007 | 7.50 | Report / Presentation Preparation | Discussion, editing and preparation of lender presentation |
| Joe Walter | 1/4/2007 | 10.00 | Report / Presentation Preparation | Discussion, editing and preparation of lender presentation |
| Joe Stein | 1/5/2007 | 2.50 | Creditor Update | Lenders meeting |
| Stephanie Rose | 1/5/2007 | 1.00 | Report / Presentation Preparation | Binding books for lender meeting |
| Joe Walter | 1/5/2007 | 1.00 | Report / Presentation Preparation | Binding books for lender meeting |
| Dan Wallitt | 1/5/2007 | 2.50 | Report / Presentation Preparation | Final prep of lender business plan book |
| Brad Dietz | 1/5/2007 | 3.00 | Creditor Update | Bank meeting at Kramer Levin |
| Joe Walter | 1/5/2007 | 3.00 | Creditor Update | Bank meeting at Kramer Levin |
| Joe Walter | 1/5/2007 | 3.00 | Creditor Update | Prepare diligence index of items to received by PJSC |
| Brad Dietz | 1/5/2007 | 1.50 | Creditor Update | Preparation for bank meeting |
| Brad Dietz | 1/5/2007 | 3.00 | Creditor Update | Bank meeting at Kramer Levin |
| Dan Wallitt | 1/8/2007 | 2.00 | Creditor Update | Review diligence Index drafts |
| Brad Dietz | 1/8/2007 | 1.00 | Discussion with Potential Buyers | Discussion w/counsel to prospective buyer re: process |
| Brad Dietz | 1/8/2007 | 0.25 | Discussion with Potential Buyers | Circulate financing letter to Fab team |
| Brad Dietz | 1/9/2007 | 1.25 | Discussion with Potential Buyers | Call w/counsel re: potential buyer, structure and process |
| Brad Dietz | 1/9/2007 | 1.00 | Client Update | Update w/management re: potential buyer |
| Brad Dietz | 1/9/2007 | 1.25 | Discussion with Potential Buyers | Additional call w/buyer counsel re: structure of possible transaction |
| Brad Dietz | 1/9/2007 | 1.00 | Client Update | Call w/management re: status of proposal |
| Brad Dietz | 1/10/2007 | 0.75 | Creditor Update | Call w/Farallon re: cash collateral request |
| Brad Dietz | 1/10/2007 | 0.75 | Client Update | Various communication to team re: FTI status, most recent debt trade |
| Brad Dietz | 1/10/2007 | 0.75 | Discussion with Potential Buyers | Discussion w/new potential interested buyer |
| Brad Dietz | 1/11/2007 | 0.50 | Discussion with Potential Buyers | Second discussion w/new potential interested buyer |
| Brad Dietz | 1/11/2007 | 1.50 | General Administrative | Review correspondance between partner/counsel |

# M. Fabrikant & Sons - Summary of Hours

## Month Ending January 23, 2007

| Professional | Date | Category | Hours | Explanation |
|---|---|---|---|---|
| Brad Dietz | 1/12/2007 | Discussion with Potential Buyers | 1.00 | Call w/American Capital Management re: interest in acq |
| Brad Dietz | 1/13/2007 | Client Update | 1.50 | Communication w/company re: status of various items |
| Brad Dietz | 1/16/2007 | Discussion with Potential Buyers | 1.00 | Call w/Kelley Drye re: LOI |
| Brad Dietz | 1/16/2007 | Client Update | 2.00 | Director update on sale process and internal reorganization |
| Dan Wallitt | 1/16/2007 | General Administrative | 2.00 | Review of LOI email discussion / drafts |
| Brad Dietz | 1/17/2007 | Client Update | 1.00 | Discussion w/CFO on inventories and A/Rs |
| Brad Dietz | 1/18/2007 | Creditor Update | 2.00 | Prep for meeting w/buyer on 1/19 |
| Dan Wallitt | 1/18/2007 | Client Update | 2.50 | Communication with company and review of liquidation analysis |
| Brad Dietz | 1/18/2007 | Client Update | 1.50 | Calls w/management re: various issues |
| Brad Dietz | 1/19/2007 | Discussion with Potential Buyers | 3.00 | Meeting at company offices w/prospective buyer |
| Brad Dietz | 1/19/2007 | Creditor Update | 0.50 | Call w/debt holder re: status |
| Brad Dietz | 1/19/2007 | Client Update | 0.75 | Calls w/management re: various issues |
| Dan Wallitt | 1/19/2007 | Discussion with Potential Buyers | 3.00 | Meeting with potential buyer re: process and company overview |
| Joe Stein | 1/19/2007 | Discussion with Potential Buyers | 3.00 | Meeting with potential buyer re: process and company overview |
| Brad Dietz | 1/22/2007 | Discussion with Potential Buyers | 1.00 | Review LOI |
| Brad Dietz | 1/22/2007 | General Administrative | 1.50 | Negotiation/review of engagement letter based on potential objection by lender group |
| Dan Wallitt | 1/23/2007 | Creditor Update | 1.00 | Review bank lawyer's concerns over fee app |
| Dan Wallitt | 1/23/2007 | Creditor Update | 1.00 | Conf call re: fee app |
| Dan Wallitt | 1/23/2007 | Creditor Update | 1.50 | Calls with potential buyers re: process |
| Joe Stein | 1/23/2007 | Creditor Update | 1.00 | Review bank lawyer's concerns over fee app |
| Joe Stein | 1/23/2007 | Creditor Update | 1.00 | Conf call re: fee app |
| Joe Stein | 1/23/2007 | Creditor Update | 1.50 | Calls with potential buyers re: process |
| Brad Dietz | 1/23/2007 | Creditor Update | 1.00 | Review bank lawyer's concerns over fee app |
| Brad Dietz | 1/23/2007 | Creditor Update | 1.00 | Conf call re: fee app |
| Brad Dietz | 1/23/2007 | Creditor Update | 1.50 | Calls with potential buyers re: process |
| Brad Dietz | 1/23/2007 | Discussion with Potential Buyers | 1.50 | Review and discussion of latest draft LOI from Tara |
| Dan Wallitt | 1/23/2007 | Discussion with Potential Buyers | 1.50 | Review and discussion of latest draft LOI from Tara |
| Joe Stein | 1/23/2007 | Discussion with Potential Buyers | 1.50 | Review and discussion of latest draft LOI from Tara |
| Brad Dietz | 1/23/2007 | Discussion with Potential Buyers | 2.00 | Prep and call w/buyer group, management and counsel re: buyer proposal |
| Brad Dietz | 1/23/2007 | General Administrative | 0.75 | Further discussion w/counsel re: engagment letter |
| Brad Dietz | 1/23/2007 | Client Update | 1.00 | Prep for call with lenders re: sale process |
| Brad Dietz | 1/23/2007 | Client Update | 0.50 | Calls to management and Getzler re: liquidation analysis |

| Professional | Hours |
|---|---|
| Brad Dietz | 56.25 |
| Joe Stein | 12.50 |
| Dan Wallitt | 42.50 |
| Joe Walter | 54.00 |
| Stephanie Rose | 6.50 |
| **Total Hours for Month Ending January 23, 2007** | **171.75** |

| Category | Hours |
|---|---|
| Business Analysis | 34.00 |
| Court Hearing | 0.00 |
| Creditor Update | 31.75 |
| General Administrative | 5.75 |
| Report / Presentation Preparation | 47.00 |
| Discussion with Potential Buyers | 31.75 |
| Testimony Preparation | 0.00 |
| Travel | 0.00 |
| Client Update | 21.50 |



**PETER J
SOLOMON
COMPANY**

520 Madison Avenue
New York, New York 10022

TEL: 212.508.1600
FAX: 212.508.1633
info@pjsolomon.com

February 23, 2007

M. Fabrikant & Sons, Inc.
One Rockefeller Plaza
New York, NY 10020

Attention:     Michael Shaffet
               Chief Operating Officer
Re:            06-12737-(SMB)

    Pursuant to the Order Establishing Procedures for Interim Monthly Compensation of Professionals (the "Order") entered on January 8, 2007, enclosed please find Peter J. Solomon Company's statement of fees and expenses for the period January 24, 2007 through January 31, 2007 (the "Fee Statement"). The amounts due are set forth on the following page. We will submit monthly invoices beginning February 1, 2007.

    Please contact me if you have any questions.

    Thank you very much for your consideration.

Very truly yours,

Joseph Stein
Managing Director

Enclosure

cc:     Alan Kolod, Esq. (w/Encl.)
        Alicia Leonhard, Esq. (w/Encl.)
        Jeffrey L Schwartz, Esq. (w/Encl.)
        Mitchel H. Perkiel, Esq. (w/Encl.)
        David Feldman, Esq. (w/Encl.)



**PETER J SOLOMON COMPANY**

520 Madison Avenue
New York, New York 10022

TEL: 212.508.1600
FAX: 212.508.1633
info@pjsolomon.com

February 23, 2007

M. Fabrikant & Sons, Inc.
One Rockefeller Plaza
New York, NY 10020

Attention:    Michael Shaffet
              Chief Operating Officer

### I N V O I C E

| | |
|---|---|
| Advisory fee for the period beginning January 24, 2007 through January 31, 2007 per Engagement Letter dated August 24, 2006, $100,000 per month: | $25,806.45 |
| Less fee holdback amount, 20% | 5,161.29 |
| Fee amount due | $20,645.16 |

*Please remit funds in U.S. dollars by wire transfer to:*

Bank of America
1185 Avenue of the Americas
New York, NY 10036
**ABA # 026 009 593  (for ACH use 021 000 322)**
For further credit to:  **Peter J. Solomon, L.P.**
                        **Account number 94292 62215**

# M. Fabrikant & Sons - Summary of Hours

## Period Ending January 31, 2007

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Dan Wallitt | 1/24/2007 | 1.50 | General Administrative | Prepare bill for first two months of retention |
| Brad Dietz | 1/25/2007 | 0.25 | Client Update | Communication to mgmt re: meeting |
| Joe Walter | 1/26/2007 | 3.00 | Creditor Update | Preparation and collection of diligence materials to give to Consensus |
| Stephanie Rose | 1/26/2007 | 2.00 | Creditor Update | Preparation and collection of diligence materials to give to Consensus |
| Brad Dietz | 1/26/2007 | 2.00 | Creditor Update | Breakfast meeting w/bank investor re: sale process |
| Brad Dietz | 1/26/2007 | 2.00 | Creditor Update | Review of due diligence materials received |
| Dan Wallitt | 1/26/2007 | 1.50 | Creditor Update | Review request list and oversee preparation of diligence materials for UCC |
| Brad Dietz | 1/29/2007 | 0.25 | Client Update | Communication to CEO re: process |
| Brad Dietz | 1/29/2007 | 5.00 | Client Update | Meeting at Fabrikant with mgmt and GHA re: discussion of alternatives and process |
| Dan Wallitt | 1/29/2007 | 5.00 | Client Update | Meeting at Fabrikant with mgmt and GHA re: discussion of alternatives and process |
| Dan Wallitt | 1/29/2007 | 1.50 | Client Update | Begin drafting analysis of alternatives |
| Joe Walter | 1/29/2007 | 3.00 | Business Analysis | Meeting at Fabrikant with mgmt and GHA re: discussion of alternatives and process |
| Joe Walter | 1/29/2007 | 2.00 | Business Analysis | Begin drafting analysis of alternatives |
| Dan Wallitt | 1/31/2007 | 4.00 | Business Analysis | Meeting at Fabrikant with mgmt and GHA re: discussion of alternatives and process |
| Dan Wallitt | 1/31/2007 | 1.00 | Business Analysis | Drafting and editing of analysis of alternatives |
| Joe Walter | 1/31/2007 | 4.00 | Business Analysis | Meeting at Fabrikant with mgmt and GHA re: discussion of alternatives and process |
| Joe Walter | 1/31/2007 | 4.00 | Business Analysis | Drafting and editing of analysis of alternatives |
| Brad Dietz | 1/31/2007 | 2.50 | Business Analysis | Review alternatives analysis/materials |
| Stephanie Rose | 1/31/2007 | 1.00 | Creditor Update | Updated Diligence Request Lists as received from potential buyers |
| Stephanie Rose | 1/31/2007 | 1.00 | Creditor Update | Gathering of additional diligence materials to provide to potential buyers |

| Category | Hours |
|---|---|
| Business Analysis | 20.50 |
| Court Hearing | 0.00 |
| Creditor Update | 12.50 |
| General Administrative | 1.50 |
| Report / Presentation Preparation | 0.00 |
| Discussion with Potential Buyers | 0.00 |
| Testimony Preparation | 0.00 |
| Travel | 0.00 |
| Client Update | 12.00 |

| Professional | Hours |
|---|---|
| Brad Dietz | 12.00 |
| Joe Stein | 0.00 |
| Dan Wallitt | 14.50 |
| Joe Walter | 16.00 |
| Stephanie Rose | 4.00 |
| **Total Hours for Period Ending January 31, 2007** | **46.50** |



520 Madison Avenue
New York, New York 10022

TEL: 212.508.1600
FAX: 212.508.1633
info@pjsolomon.com

April 2, 2007

M. Fabrikant & Sons, Inc.
One Rockefeller Plaza
New York, NY 10020

Attention:     Michael Shaffet
               Chief Operating Officer
Re:            06-12737-(SMB)

     Pursuant to the Order Establishing Procedures for Interim Monthly Compensation of Professionals (the "Order") entered on January 8, 2007, enclosed please find Peter J. Solomon Company's statement of fees and expenses for the period February 1, 2007 through February 28, 2007 (the "Fee Statement"). The amounts due are set forth on the following page.

     Please contact me if you have any questions.

     Thank you very much for your consideration.

Very truly yours,

Joseph Stein
Managing Director

Enclosure

cc:   Alan Kolod, Esq. (w/Encl.)
      Alicia Leonhard, Esq. (w/Encl.)
      Jeffrey L Schwartz, Esq. (w/Encl.)
      Mitchel H. Perkiel, Esq. (w/Encl.)
      David Feldman, Esq. (w/Encl.)



520 Madison Avenue
New York, New York 10022

TEL: 212.508.1600
FAX: 212.508.1633
info@pjsolomon.com

**PETER J SOLOMON COMPANY**

April 2, 2007

M. Fabrikant & Sons, Inc.
One Rockefeller Plaza
New York, NY  10020

Attention:  Michael Shaffet
            Chief Operating Officer

## I N V O I C E

| | |
|---|---:|
| Advisory fee for the period beginning February 1, 2007 through February 28, 2007 per Engagement Letter dated August 24, 2006, $100,000 per month: | $100,000.00 |
| Less fee holdback amount, 20% | 20,000.00 |
| Fee amount due | 80,000.00 |

Out-of-pocket expenses for the period
January 24, 2007 through February 28, 2007:

| | | |
|---|---:|---:|
| Research, copies and presentation books | $10,624.90 | |
| Meetings, late meals, late taxis | 769.44 | |
| Delivery, postage, conference calls and other communications | 207.25 | 11,601.59 |
| **Total amount due** | | **$ 91,601.59** |

*Please remit funds in U.S. dollars by wire transfer to:*

Bank of America
1185 Avenue of the Americas
New York, NY  10036
**ABA # 026 009 593  (for ACH use 021 000 322)**
For further credit to:  **Peter J. Solomon, L.P.**
                        **Account number 94292 62215**

# M. Fabrikant & Sons - Summary of Hours

## Month of February 2007

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Brad Dietz | 2/1/2007 | 1.00 | Business Analysis | Reviewed and edited alternatives analysis materials |
| Joe Stein | 2/1/2007 | 1.50 | Creditor Update | Secured creditors group call regarding status of case and their valuation guidance |
| Brad Dietz | 2/1/2007 | 0.25 | Client Update | Communication w/ counsel re: alternatives analysis |
| Brad Dietz | 2/1/2007 | 2.00 | Creditor Update | Call with Lenders re: alternatives analysis |
| Brad Dietz | 2/1/2007 | 2.00 | Creditor Update | Call with professionals re: alternatives analysis |
| Dan Wallit | 2/1/2007 | 2.00 | Business Analysis | Call with Lenders re: alternatives analysis |
| Dan Wallit | 2/1/2007 | 2.00 | Business Analysis | Call with professionals re: alternatives analysis |
| Brad Dietz | 2/1/2007 | 2.00 | Business Analysis | Review and editing of analysis of alternatives |
| Brad Dietz | 2/1/2007 | 2.50 | Business Analysis | Call with Lenders re: alternatives analysis |
| Brad Dietz | 2/1/2007 | 0.25 | Client Update | Discussion w/ GHA re: analysis of alternatives |
| Brad Dietz | 2/1/2007 | 4.00 | Business Analysis | Communication w/ counsel re: alternatives analysis |
| Joe Stein | 2/2/2007 | 1.50 | Creditor Update | Call with professionals re: information requests and agenda for group meeting |
| Dan Wallit | 2/2/2007 | 3.00 | Business Analysis | Professionals call re: analysis of alternatives |
| Joe Walter | 2/2/2007 | 5.00 | Business Analysis | Finalize alternatives analysis for Board meeting |
| Brad Dietz | 2/2/2007 | 3.00 | Creditor Update | Professionals call re: analysis of alternatives |
| Brad Dietz | 2/2/2007 | 1.00 | Creditor Update | Finalize alternatives analysis for Board meeting |
| Joe Walter | 2/2/2007 | 3.00 | Business Analysis | Professionals call re: analysis of alternatives |
| Joe Walter | 2/2/2007 | 4.00 | Business Analysis | Finalize alternatives analysis for Board meeting |
| Stephanie Rose | 2/2/2007 | 2.00 | Creditor Update | Copied diligence materials to send to FTI via Fedex |
| Joe Walter | 2/4/2007 | 1.50 | Report / Presentation Preparation | Preparation and collection of materials for board meeting |
| Joe Walter | 2/5/2007 | 6.00 | Client Update | Meeting at Fabrikant w/board and professionals re: liquidation/363/reorg analysis |
| Brad Dietz | 2/5/2007 | 1.00 | Client Update | Call w/counsel to Tara re: proposal |
| Joe Walter | 2/5/2007 | 3.00 | Business Analysis | Revision and preparation of analysis of alternatives based on board comments |
| Joe Walter | 2/6/2007 | 3.00 | Business Analysis | Meeting at Fabrikant with mgmt and GHA to revise analysis of alternatives |
| Brad Dietz | 2/6/2007 | 1.00 | Client Update | Calls w/management re: various topics |
| Joe Walter | 2/6/2007 | 3.00 | Business Analysis | Revision and preparation of analysis of alternatives for board review |
| Joe Walter | 2/7/2007 | 4.00 | Business Analysis | Prep and professionals meeting re: analysis of alternatives |
| Dan Wallit | 2/7/2007 | 3.50 | Business Analysis | Prep and professionals meeting re: analysis of alternatives |
| Joe Walter | 2/7/2007 | 2.00 | Business Analysis | Editing and preparation of analysis of alternatives for board review |
| Joe Walter | 2/7/2007 | 4.00 | Business Analysis | Prep and professionals meeting re: analysis of alternatives |
| Joe Walter | 2/7/2007 | 2.00 | Business Analysis | Editing and preparation of analysis of alternatives for board review |
| Stephanie Rose | 2/7/2007 | 2.00 | Creditor Update | Burned CDs with PJSC contact data, sent via fedex to Consensus and FTI |
| Brad Dietz | 2/8/2007 | 1.00 | Business Analysis | Review of liquidation analysis |
| Brad Dietz | 2/8/2007 | 2.50 | Business Analysis | Management calls re: analysis of alternatives |
| Brad Dietz | 2/8/2007 | 1.00 | Business Analysis | Preparation for lenders meeting 2/9 |
| Dan Wallit | 2/8/2007 | 2.50 | Client Update | Management calls re: analysis of alternatives |
| Brad Dietz | 2/8/2007 | 2.50 | Client Update | Editing and preparation of analysis of alternatives for lenders meeting |
| Brad Dietz | 2/8/2007 | 2.00 | Discussion with potential buyers | Review of term sheet received from prospective party |
| Joe Walter | 2/8/2007 | 5.00 | Business Analysis | Revision and preparation of analysis of alternatives for board review |
| Joe Walter | 2/8/2007 | 2.00 | Report / Presentation Preparation | Call with Board to discuss analysis of alternatives |
| Joe Walter | 2/8/2007 | 4.00 | Business Analysis | Revision and preparation of analysis of alternatives based on board comments |
| Joe Walter | 2/9/2007 | 2.00 | Business Analysis | Revision and preparation of analysis of alternatives for lenders meeting |
| Stephanie Rose | 2/9/2007 | 2.00 | Creditor Update | Gathered information for lenders meeting and distributed materials via email |
| Brad Dietz | 2/9/2007 | 4.00 | Creditor Update | Lenders meeting and subsequent discussion w/management re: liquidation/reorg/sale |
| Dan Wallit | 2/9/2007 | 4.00 | Creditor Update | Lenders meeting and subsequent discussion w/management re: liquidation/reorg/sale |
| Joe Walter | 2/9/2007 | 4.00 | Creditor Update | Lenders meeting and subsequent discussion w/management re: liquidation/reorg/sale |
| Brad Dietz | 2/10/2007 | 1.00 | Client Update | Calls w/counsel and management re: various topics |

# M. Fabrikant & Sons - Summary of Hours

## Month of February 2007

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Joe Walter | 2/12/2007 | 3.00 | Business Analysis | Revision and preparation of analysis of alternatives for board review |
| Brad Dietz | 2/13/2007 | 0.25 | Client Update | Communication to counsel re: lender meeting |
| Brad Dietz | 2/13/2007 | 1.50 | Business Analysis | Prep and board call re: analysis of alternatives |
| Joe Walter | 2/13/2007 | 1.00 | Report / Presentation Preparation | Prep and board call re: analysis of alternatives |
| Dan Wallitt | 2/13/2007 | 1.00 | Business Analysis | Prep and board call re: analysis of alternatives |
| Dan Wallitt | 2/13/2007 | 1.50 | Business Analysis | Prep and board call re: analysis of alternatives |
| Joe Walter | 2/13/2007 | 4.00 | Business Analysis | Revision and preparation of analysis of alternatives based on board comments |
| Joe Walter | 2/13/2007 | 2.00 | General Administrative | Revision and preparation of analysis of alternatives based on board comments |
| Brad Dietz | 2/14/2007 | 1.50 | Client Update | Gathering of diligence materials for creditors - fedex to Consensus |
| Joe Walter | 2/14/2007 | 1.50 | Report / Presentation Preparation | Prep and board call re: analysis of alternatives |
| Joe Walter | 2/14/2007 | 1.50 | Business Analysis | Revision and preparation of analysis of alternatives based on board comments |
| Dan Wallitt | 2/14/2007 | 1.50 | Client Update | Prep and board call re: analysis of alternatives |
| Joe Walter | 2/14/2007 | 1.50 | Client Update | Revision and preparation of analysis of alternatives based on board comments |
| Joe Walter | 2/15/2007 | 2.00 | Creditor Update | Meeting with Lenders' advisors to discuss alternatives |
| Brad Dietz | 2/20/2007 | 0.25 | Discussion with potential buyers | Calls to mgmt re: status of process |
| Brad Dietz | 2/20/2007 | 0.25 | Discussion with potential buyers | Calls to prospective buyer re: process |
| Brad Dietz | 2/20/2007 | 2.00 | Discussion with potential buyers | Dinner meeting w/strategic party re: process and company |
| Dan Wallitt | 2/20/2007 | 2.00 | Discussion with potential buyers | Dinner meeting w/strategic party re: process and company |
| Brad Dietz | 2/20/2007 | 0.25 | Creditor Update | Correspondence to bank investor re: status |
| Brad Dietz | 2/21/2007 | 0.50 | Discussion with potential buyers | Discussion w/Matthew Fortgang re: dinner mtg w/counter party |
| Dan Wallitt | 2/21/2007 | 0.50 | Creditor Update | Internal discussions re: clarification of affiliate entities |
| Dan Wallitt | 2/21/2007 | 0.50 | Creditor Update | Call with FTI re: clarification of affiliate entities |
| Joe Walter | 2/21/2007 | 0.50 | Creditor Update | Internal discussions re: clarification of affiliate entities |
| Joe Walter | 2/21/2007 | 0.50 | Creditor Update | Call with FTI re: clarification of affiliate entities |
| Dan Wallitt | 2/23/2007 | 1.00 | Client Update | Prep and call with board re: affiliate entities |
| Joe Walter | 2/23/2007 | 0.50 | Client Update | Call with professionals re: affiliate entities |
| Joe Walter | 2/23/2007 | 1.00 | Client Update | Prep and call with board re: affiliate entities |
| Brad Dietz | 2/27/2007 | 0.50 | Creditor Update | Call to Par 4 re: status of process |
| Brad Dietz | 2/27/2007 | 0.50 | Client Update | Call to management re: status of buyer, mtg w/lenders for next week |
| Dan Wallitt | 2/27/2007 | 0.50 | Client Update | Call to management re: status of buyer, mtg w/lenders for next week |
| Brad Dietz | 2/28/2007 | 0.25 | Discussion with Potential Buyers | Communication to Indian investment bank re: buyer(s) status |
| Brad Dietz | 2/28/2007 | 0.50 | Creditor Update | Call to committee FA re: status of various items |

| Professional | Hours |
|---|---|
| Brad Dietz | 45.75 |
| Joe Stein | 3.00 |
| Dan Wallitt | 41.00 |
| Joe Walter | 61.50 |
| Stephanie Rose | 6.00 |

| Category | Hours |
|---|---|
| Business Analysis | 85.00 |
| Court Hearing | 0.00 |
| Creditor Update | 34.25 |
| General Administrative | 2.00 |
| Report / Presentation Preparation | 6.00 |
| Discussion with Potential Buyers | 7.25 |
| Testimony Preparation | 0.00 |
| Travel | 0.00 |
| Client Update | 22.75 |

| | Hours |
|---|---|
| Total Hours for Month of February 2007 | 157.25 |



PETER J
SOLOMON
COMPANY

520 Madison Avenue
New York, New York 10022

TEL: 212.508.1600
FAX: 212.508.1633
info@pjsolomon.com

April 16, 2007

M. Fabrikant & Sons, Inc.
One Rockefeller Plaza
New York, NY 10020

Attention:    Michael Shaffet
              Chief Operating Officer
Re:           06-12737-(SMB)

    Pursuant to the Order Establishing Procedures for Interim Monthly Compensation of Professionals (the "Order") entered on January 8, 2007, enclosed please find Peter J. Solomon Company's revised statement of fees and expenses for the period March 1, 2007 through March 31, 2007 (the "Fee Statement"). The amounts due are set forth on the following page. This invoice replaces the original March invoice dated April 4, 2007.

    Please contact me if you have any questions.

    Thank you very much for your consideration.

                                Very truly yours,

                                Daniel Wallitt

Enclosure

cc:    Alan Kolod, Esq. (w/Encl.)
       Alicia Leonhard, Esq. (w/Encl.)
       Jeffrey L Schwartz, Esq. (w/Encl.)
       Mitchel H. Perkiel, Esq. (w/Encl.)
       David Feldman, Esq. (w/Encl.)



**PETER J
SOLOMON
COMPANY**

520 Madison Avenue
New York, New York 10022

TEL: 212.508.1600
FAX: 212.508.1633
info@pjsolomon.com

April 16, 2007

M. Fabrikant & Sons, Inc.
One Rockefeller Plaza
New York, NY 10020

Attention:    Michael Shaffet
              Chief Operating Officer

### R E V I S E D   I N V O I C E

| | | |
|---|---|---|
| Advisory fee for the period beginning March 1, 2007 through March 31, 2007 per Engagement Letter dated August 24, 2006, $100,000 per month: | | $100,000.00 |
| Less fee holdback amount, 20% | | 20,000.00 |
| Fee amount due | | 80,000.00 |
| Out-of-pocket expenses for the period March 1, 2007 through March 31, 2007: | | |
| Meetings, late meals, late taxis | $205.93 | |
| Delivery, postage, conference calls and other communications | 562.86 | 768.79 |
| **Total amount due** | | $ 80,768.79 |

*Please remit funds in U.S. dollars by wire transfer to:*

Bank of America
1185 Avenue of the Americas
New York, NY 10036
**ABA # 026 009 593  (for ACH use 021 000 322)**
For further credit to:  **Peter J. Solomon, L.P.**
                        **Account number 94292 62215**

# M. Fabrikant & Sons - Summary of Hours

## Month of March 2007

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Brad Dietz | 3/1/2007 | 0.75 | Creditor Update | Call w/lender counsel on various issues |
| Brad Dietz | 3/1/2007 | 0.50 | Client Update | Call w/company counsel about sale process/other issues |
| Brad Dietz | 3/2/2007 | 1.00 | Discussion with Potential Buyers | Call w/prospective buyer re: process |
| Brad Dietz | 3/2/2007 | 1.50 | Client Update | Prep and participate in board call re: status of process |
| Dan Wallitt | 3/2/2007 | 2.00 | Client Update | Prep and participate in board call re: status of process |
| Joe Walter | 3/2/2007 | 1.00 | Client Update | Prep and participate in board call re: status of process |
| Brad Dietz | 3/5/2007 | 0.50 | Creditor Update | Calls and email to Par 4 and BofA re: mtg this week to discuss reorg/offer |
| Brad Dietz | 3/5/2007 | 2.00 | General Administrative | Shrenuj (Indian based potential buyer) research and background |
| Brad Dietz | 3/5/2007 | 0.50 | Client Update | Call to company re: Shrenuj information |
| Joe Walter | 3/5/2007 | 2.00 | General Administrative | Shrenuj (Indian based potential buyer) research and background |
| Brad Dietz | 3/6/2007 | 1.00 | Discussion with Potential Buyers | Call to V-Global re: prospect |
| Brad Dietz | 3/6/2007 | 0.25 | Business Analysis | Cash collateral order - review communication from counsel and review |
| Brad Dietz | 3/6/2007 | 0.25 | Client Update | Communication to company re: Shrenuj |
| Brad Dietz | 3/6/2007 | 0.50 | Creditor Update | Call to BofA re: mtg this week |
| Brad Dietz | 3/7/2007 | 0.50 | Creditor Update | Call to M. Fortgang re: update on various matters |
| Brad Dietz | 3/7/2007 | 0.25 | Creditor Update | Call to Par 4: mtg this week |
| Dan Wallitt | 3/8/2007 | 1.00 | Client Update | E-mails among professionals discussing strategic options |
| Brad Dietz | 3/8/2007 | 1.50 | Client Update | Prep and board call re: strategic options |
| Joe Walter | 3/8/2007 | 1.50 | Client Update | Prep and board call re: strategic options |
| Brad Dietz | 3/8/2007 | 0.50 | Discussion with Potential Buyers | Call to potential buyers counsel to discuss term sheet |
| Brad Dietz | 3/8/2007 | 0.25 | Client Update | Call to company counsel to discuss board mtg issues |
| Brad Dietz | 3/8/2007 | 0.25 | Creditor Update | Call to hedge fund re reorganization plan |
| Brad Dietz | 3/9/2007 | 0.25 | Creditor Update | Call to BofA desk re reorganization plan/alternatives |
| Brad Dietz | 3/9/2007 | 0.50 | Discussion with Potential Buyers | Call w/Tara counsel re: proposal |
| Brad Dietz | 3/9/2007 | 0.50 | Client Update | Call w/MF re: bank discussion and Tara proposal |
| Brad Dietz | 3/9/2007 | 0.25 | Client Update | Call to company counsel re: liquidation/Tara options |
| Brad Dietz | 3/9/2007 | 0.25 | Client Update | Correspondence with management re: 3/19 mtg |
| Joe Walter | 3/10/2007 | 2.00 | Creditor Update | Collection of materials for unsecured creditors - fedex to Consensus |
| Brad Dietz | 3/11/2007 | 0.50 | Client Update | Communication to mgmt re: sale |
| Brad Dietz | 3/12/2007 | 0.50 | Client Update | Phone call w/MF re: Rajeev proposal/status |
| Brad Dietz | 3/12/2007 | 2.00 | General Administrative | Review correspondence from counsel re: proposal / status |
| Brad Dietz | 3/12/2007 | 0.50 | Creditor Update | Calls and email to Par 4 and BofA re: mtg this week to discuss reorg/offer |
| Brad Dietz | 3/12/2007 | 1.75 | General Administrative | Review correspondence from board/counsel re: reorg / offer |
| Dan Wallitt | 3/12/2007 | 0.50 | General Administrative | Review bb correspondence among parties re: reorg / offer |
| Brad Dietz | 3/13/2007 | 1.50 | Creditor Update | Prep and call w/FM and FTI re: process |
| Brad Dietz | 3/13/2007 | 1.00 | Client Update | Call w/counsel re: Tara proposal and 363 |
| Brad Dietz | 3/13/2007 | 2.00 | Report / Presentation Preparation | Prep and board call re: Tara proposal and 363 |
| Brad Dietz | 3/13/2007 | 1.00 | Report / Presentation Preparation | Review court filings |
| Dan Wallitt | 3/13/2007 | 2.00 | Report / Presentation Preparation | Prep and board call re: Tara proposal and 363 |
| Dan Wallitt | 3/13/2007 | 1.00 | Report / Presentation Preparation | Call with counsel re: recent court filings |
| Dan Wallitt | 3/13/2007 | 1.50 | Report / Presentation Preparation | Review court filings |
| Joe Walter | 3/13/2007 | 2.00 | Report / Presentation Preparation | Prep and board call re: Tara proposal and 363 |
| Brad Dietz | 3/14/2007 | 3.00 | Discussion with Potential Buyers | Meeting at Fab w/representatives of Tara re: proposal |
| Dan Wallitt | 3/14/2007 | 3.50 | Discussion with Potential Buyers | Meeting at Fab w/representatives of Tara re: proposal |
| Brad Dietz | 3/15/2007 | 2.00 | Client Update | Various calls and communication w/mgmt re Tara options |
| Brad Dietz | 3/15/2007 | 3.00 | Client Update | Various calls and communication w/mgmt re Tara options |
| Brad Dietz | 3/16/2007 | 3.00 | General Administrative | Discussion with counsel re: PJSC retention |
| Dan Wallitt | 3/16/2007 | 4.50 | Creditor Update | Discussions and searches re: providing docs to UCC |
| Brad Dietz | 3/17/2007 | 0.50 | Discussion with Potential Buyers | Followup communication w/Tara counsel re: proposal |

# M. Fabrikant & Sons - Summary of Hours

## Month of March 2007

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Dan Wallitt | 3/19/2007 | 2.00 | Client Update | Call with mgmt re: potential revised Tara offer |
| Dan Wallitt | 3/19/2007 | 1.50 | Client Update | Internal discussions re: potential revised Tara offer |
| Joe Walter | 3/19/2007 | 4.00 | Business Analysis | Preparation and editing of analysis of revised Tara offer |
| Brad Dietz | 3/20/2007 | 3.00 | Report / Presentation Preparation | Prep and call with lenders re: revised Tara Offer |
| Dan Wallitt | 3/20/2007 | 3.00 | Report / Presentation Preparation | Prep and call with lenders re: revised Tara Offer |
| Joe Walter | 3/20/2007 | 3.00 | Report / Presentation Preparation | Prep and call with lenders re: revised Tara Offer |
| Joe Walter | 3/20/2007 | 1.50 | Report / Presentation Preparation | Preparation and editing of analysis of revised Tara offer |
| Brad Dietz | 3/21/2007 | 1.00 | Business Analysis | Liquidation analysis discussion w/Getzler |
| Dan Wallitt | 3/21/2007 | 1.00 | Business Analysis | Internal discussion re: liquidation analysis |
| Brad Dietz | 3/21/2007 | 0.25 | Client Update | Call to MF re liquidation analysis and Tara proposal |
| Brad Dietz | 3/21/2007 | 0.25 | Client Update | Call w/counsel re: Tara proposal and liquidation alternatives |
| Brad Dietz | 3/21/2007 | 2.50 | Report / Presentation Preparation | Prep and call with Board re: revised Tara Offer and Lender response |
| Dan Wallitt | 3/21/2007 | 2.50 | Report / Presentation Preparation | Prep and call with Board re: revised Tara Offer and Lender response |
| Joe Walter | 3/21/2007 | 2.00 | Report / Presentation Preparation | Prep and call with Board re: revised Tara Offer and Lender response |
| Joe Walter | 3/22/2007 | 2.25 | Creditor Update | Collection of materials in response to lender questions on revised offer |
| Brad Dietz | 3/22/2007 | 0.25 | General Administrative | Call to counsel re PJSC retention |
| Brad Dietz | 3/22/2007 | 0.25 | Discussion with Potential Buyers | Meeting w/prospective buyer at PJSC re: process |
| Brad Dietz | 3/25/2007 | 1.50 | Business Analysis | Review of lender counter proposal |
| Brad Dietz | 3/26/2007 | 0.75 | Business Analysis | Calls to Tara professionals re: lender counter |
| Brad Dietz | 3/26/2007 | 2.00 | Business Analysis | Review liquidation analysis |
| Joe Walter | 3/26/2007 | 3.00 | Business Analysis | Analysis and review of liquidation analysis and lender counter |
| Brad Dietz | 3/26/2007 | 1.00 | Report / Presentation Preparation | Prep and board call re: discussion of liquidation and offer analyses |
| Dan Wallitt | 3/26/2007 | 3.00 | Report / Presentation Preparation | Preparation and editing of analyses of liquidation and revised Tara offer |
| Joe Walter | 3/26/2007 | 1.00 | Report / Presentation Preparation | Prep and board call re: discussion of liquidation and offer analyses |
| Brad Dietz | 3/26/2007 | 2.50 | Report / Presentation Preparation | Preparation and editing of analyses of liquidation and revised Tara offer |
| Dan Wallitt | 3/26/2007 | 1.00 | Client Update | Prep and board call re: discussion of liquidation and offer analyses |
| Brad Dietz | 3/26/2007 | 0.50 | Client Update | Followup call w/counsel re: lender counter/Tara proposal |
| Brad Dietz | 3/27/2007 | 0.25 | Client Update | Call to SF re: status of Tara proposal |
| Brad Dietz | 3/28/2007 | 1.00 | Discussion with Potential Buyers | Call w/counsels to Tara re: revised offer and response |
| Brad Dietz | 3/28/2007 | 2.00 | Client Update | Prep and w/board re: Tara revised offer |
| Brad Dietz | 3/28/2007 | 0.50 | Business Analysis | Review revised term sheet from Tara |
| Joe Walter | 3/28/2007 | 0.50 | Discussion with Potential Buyers | Correspondence w/Tara counsel re: term sheet |
| Brad Dietz | 3/28/2007 | 0.25 | Client Update | Call to company counsel and board counsel re: board mtg |
| Brad Dietz | 3/29/2007 | 2.00 | Client Update | Call w/professionals re: update on revised offer and lender counter |
| Joe Walter | 3/29/2007 | 1.00 | Business Analysis | Editing of update analysis on revised bid |
| Brad Dietz | 3/29/2007 | 1.00 | Client Update | Call w/professionals re: update on revised offer and lender counter |
| Brad Dietz | 3/29/2007 | 0.50 | Creditor Update | Call w/bank professionals re: revised offer and lender counter |
| Brad Dietz | 3/29/2007 | 1.00 | Client Update | Participate in professionals call re: Tara bid |
| Joe Walter | 3/29/2007 | 2.00 | Business Analysis | Editing and preparation of update analysis on revised bid |
| Brad Dietz | 3/29/2007 | 1.00 | Client Update | Call w/professionals re: update on revised offer and lender counter |
| Dan Wallitt | 3/30/2007 | 1.25 | Client Update | Editing and preparation of update analysis on revised bid |
| Dan Wallitt | 3/30/2007 | 0.75 | Client Update | Call with management re: review offer analysis |
| Joe Walter | 3/30/2007 | 2.25 | Business Analysis | Editing and preparation of update analysis on revised bid |
| Joe Walter | 3/30/2007 | 0.75 | Business Analysis | Call with management re: review offer analysis |
| Brad Dietz | 3/30/2007 | 0.75 | Client Update | Call w/counsel re: review offer analysis |
| Brad Dietz | 3/30/2007 | 0.75 | Client Update | Call with management re: review offer analysis |
| Joe Walter | 3/30/2007 | 1.00 | Client Update | Call w/management and follow on call w/ professionals re: bank response |
| Brad Dietz | 3/30/2007 | 2.00 | Client Update | Call w/management and follow on call w/ professionals re: bank response |

# M. Fabrikant & Sons - Summary of Hours

## Month of March 2007

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|

| Professional | Hours |
|---|---|
| Brad Dietz | 59.00 |
| Joe Stein | 0.00 |
| Dan Walfitt | 34.50 |
| Joe Walter | 34.75 |
| Stephanie Rose | 0.00 |
| **Total Hours for Month of March 2007** | **128.25** |

| Category | Hours |
|---|---|
| Business Analysis | 20.00 |
| Court Hearing | 0.00 |
| Creditor Update | 13.50 |
| General Administrative | 10.00 |
| Report / Presentation Preparation | 34.50 |
| Discussion with Potential Buyers | 13.75 |
| Testimony Preparation | 0.00 |
| Travel | 0.00 |
| Client Update | 36.50 |



PETER J.
SOLOMON
COMPANY

520 Madison Avenue
New York, New York 10022

TEL: 212.508.1600
FAX: 212.508.1633
info@pjsolomon.com

May 31, 2007

M. Fabrikant & Sons, Inc.
One Rockefeller Plaza
New York, NY 10020

Attention:   Michael Shaffet
              Chief Operating Officer
Re:          06-12737-(SMB)

Pursuant to the Order Establishing Procedures for Interim Monthly Compensation of Professionals (the "Order") entered on January 8, 2007, enclosed please find Peter J. Solomon Company's revised statement of fees and expenses for the period April 1, 2007 through April 30, 2007 (the "Fee Statement"). This invoice reduces the current amount due by previous overpayments and replaces the invoice distributed May 7, 2007. The amounts due are set forth on the following page.

Please contact me if you have any questions.

Thank you very much for your consideration.

Very truly yours,

Joseph Stein
Managing Director

Enclosure

cc:    Alan Kolod, Esq. (w/Encl.)
       Alicia Leonhard, Esq. (w/Encl.)
       Jeffrey L Schwartz, Esq. (w/Encl.)
       Mitchel H. Perkiel, Esq. (w/Encl.)
       David Feldman, Esq. (w/Encl.)



520 Madison Avenue
New York, New York 10022

TEL: 212.508.1600
FAX: 212.508.1633
info@pjsolomon.com

**PETER J
SOLOMON
COMPANY**

May 31, 2007

M. Fabrikant & Sons, Inc.
One Rockefeller Plaza
New York, NY 10020

Attention:    Michael Shaffet
              Chief Operating Officer

### R E V I S E D   I N V O I C E

| | | |
|---|---:|---:|
| Advisory fee for the period beginning April 1, 2007 through April 30, 2007 per Engagement Letter dated August 24, 2006, $100,000 per month: | | $100,000.00 |
| Less fee holdback amount, 20% | | 20,000.00 |
| Fee amount due | | 80,000.00 |
| Out-of-pocket expenses for the period April 1, 2007 through April 30, 2007: | | |
| Meetings, late meals, late taxis | $409.64 | |
| Delivery, postage, conference calls and other communications | 442.45 | 852.09 |
| **Amount due before credit** | | 80,852.09 |
| **Less credit for expense overpayment** | | 6,932.91 |
| **Total amount due** | | $ 73,919.18 |

*Please remit funds in U.S. dollars by wire transfer to:*

Bank of America
1185 Avenue of the Americas
New York, NY 10036
**ABA # 026 009 593  (for ACH use 021 000 322)**
For further credit to:   **Peter J. Solomon, L.P.**
                         **Account number 94292 62215**

# M. Fabrikant & Sons - Summary of Hours

## Month of April 2007

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Dan Wallitt | 4/2/2007 | 1.50 | Report / Presentation Preparation | Preparation of solicitation package |
| Dan Wallitt | 4/2/2007 | 1.00 | General Administrative | Review of court filing drafts for 363 sale |
| Joe Walter | 4/2/2007 | 3.00 | Report / Presentation Preparation | Preparation of solicitation package |
| Joe Walter | 4/2/2007 | 1.00 | General Administrative | Review of court filing drafts for 363 sale |
| Brad Dietz | 4/2/2007 | 0.50 | Report / Presentation Preparation | Preparation of solicitation package |
| Brad Dietz | 4/2/2007 | 1.00 | General Administrative | Review of court filing drafts for 363 sale |
| Dan Wallitt | 4/4/2007 | 1.50 | Report / Presentation Preparation | Preparation of solicitation package |
| Joe Walter | 4/4/2007 | 3.00 | Report / Presentation Preparation | Preparation of solicitation package |
| Brad Dietz | 4/4/2007 | 1.00 | Report / Presentation Preparation | Preparation of solicitation package |
| Joe Walter | 4/6/2007 | 2.50 | Report / Presentation Preparation | Preparation of solicitation package |
| Dan Wallitt | 4/6/2007 | 1.00 | Report / Presentation Preparation | Preparation of solicitation package and distribution for internal review |
| Dan Wallitt | 4/9/2007 | 3.00 | Report / Presentation Preparation | Solicitation package edit and review |
| Joe Walter | 4/9/2007 | 0.50 | Report / Presentation Preparation | Solicitation package edit and review |
| Brad Dietz | 4/9/2007 | 2.00 | Report / Presentation Preparation | Solicitation package edit and review |
| Joe Walter | 4/13/2007 | 0.50 | General Administrative | Solicitation package edit and review |
| Brad Dietz | 4/13/2007 | 0.25 | Report / Presentation Preparation | Review of Information request list for dataroom |
| Brad Dietz | 4/13/2007 | 0.25 | Report / Presentation Preparation | Solicitation package edit and review |
| Dan Wallitt | 4/13/2007 | 0.50 | General Administrative | Review of Information request list for dataroom |
| Brad Dietz | 4/13/2007 | 0.50 | Report / Presentation Preparation | Solicitation package edit and review |
| Dan Wallitt | 4/13/2007 | 0.50 | General Administrative | Review of information request list for dataroom |
| Brad Dietz | 4/14/2007 | 2.50 | Business Analysis | APA matrix review, lender response review |
| Dan Wallitt | 4/14/2007 | 4.00 | Business Analysis | APA matrix review, lender response review |
| Brad Dietz | 4/16/2007 | 1.00 | Business Analysis | APA matrix update and review |
| Dan Wallitt | 4/16/2007 | 1.50 | Business Analysis | APA matrix update and review |
| Joe Walter | 4/16/2007 | 3.00 | General Administrative | Collection of diligence materials for dataroom |
| Joe Walter | 4/17/2007 | 2.00 | Report / Presentation Preparation | Solicitation package edit and review |
| Brad Dietz | 4/16/2007 | 0.50 | Business Analysis | APA matrix update and review |
| Dan Wallitt | 4/16/2007 | 1.00 | Business Analysis | APA matrix update and review |
| Joe Walter | 4/18/2007 | 4.50 | Report / Presentation Preparation | Solicitation package edit and review |
| Joe Walter | 4/18/2007 | 4.00 | Discussion with Potential Buyers | Distribution of NDAs and Solicitation Package to interested parties |
| Joe Walter | 4/19/2007 | 6.50 | Discussion with Potential Buyers | Distribution of NDAs and Solicitation Package to interested parties |
| Joe Walter | 4/19/2007 | 3.50 | General Administrative | Preparation and update of buyers list to track process |
| Joe Walter | 4/19/2007 | 8.00 | Discussion with Potential Buyers | Calls to potential buyers to discuss 363 process and determine interest |
| Dan Wallitt | 4/20/2007 | 7.50 | Discussion with Potential Buyers | Calls to potential buyers to discuss 363 process and determine interest |
| Joe Walter | 4/20/2007 | 5.00 | Discussion with Potential Buyers | Distribution of NDAs and Solicitation Package to interested parties |
| Joe Walter | 4/20/2007 | 1.50 | General Administrative | Update of buyers list to track process |
| Dan Wallitt | 4/23/2007 | 5.00 | Discussion with Potential Buyers | Calls to potential buyers to discuss 363 process and determine interest |
| Dan Wallitt | 4/23/2007 | 1.00 | Client Update | Calls with professionals to discuss progress and status of contacts |
| Joe Walter | 4/23/2007 | 2.50 | Discussion with Potential Buyers | Distribution of NDAs and Solicitation Package to interested parties |
| Joe Walter | 4/23/2007 | 2.00 | General Administrative | Update of buyers list to track process |
| Joe Walter | 4/23/2007 | 4.00 | Discussion with Potential Buyers | Calls to potential buyers to discuss 363 process and determine interest |
| Dan Wallitt | 4/24/2007 | 1.50 | Client Update | Calls with professionals to discuss progress and status of contacts |
| Joe Walter | 4/24/2007 | 1.00 | Client Update | Calls with professionals to discuss progress and status of contacts |
| Brad Dietz | 4/24/2007 | 1.00 | Discussion with Potential Buyers | Distribution of NDAs and Solicitation Package to interested parties |
| Joe Walter | 4/24/2007 | 1.00 | General Administrative | Update of buyers list to track process |
| Joe Walter | 4/24/2007 | 1.00 | Client Update | Calls with professionals to discuss progress and status of contacts |
| Joe Walter | 4/25/2007 | 4.00 | Discussion with Potential Buyers | Calls to potential buyers to discuss 363 process and determine interest |
| Dan Wallitt | 4/25/2007 | 1.50 | Client Update | Calls with professionals to discuss progress and status of contacts |
| Joe Walter | 4/25/2007 | 2.50 | Discussion with Potential Buyers | Distribution of NDAs and Solicitation Package to interested parties |
| Joe Walter | 4/25/2007 | 0.50 | General Administrative | Update of buyers list to track process |
| Joe Walter | 4/25/2007 | 1.00 | Client Update | Calls with professionals to discuss progress and status of contacts |
| Joe Walter | 4/26/2007 | 1.00 | Discussion with Potential Buyers | Calls to potential buyers to discuss 363 process and determine interest |
| Dan Wallitt | 4/26/2007 | 1.00 | Client Update | Calls with professionals to discuss progress and status of contacts |
| Joe Walter | 4/26/2007 | 1.00 | Client Update | Calls with professionals to discuss progress and status of contacts |

# M. Fabrikant & Sons - Summary of Hours

## Month of April 2007

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Joe Walter | 4/26/2007 | 1.00 | Discussion with Potential Buyers | Calls to potential buyers to discuss 363 process and determine interest |
| Joe Walter | 4/26/2007 | 1.00 | Discussion with Potential Buyers | Distribution of NDAs and Solicitation Package to interested parties |
| Joe Walter | 4/26/2007 | 1.00 | Discussion with Potential Buyers | Coordination of dataroom access |
| Brad Dietz | 4/26/2007 | 1.50 | Discussion with Potential Buyers | Calls to potential buyers to discuss 363 process and determine interest |
| Dan Wallitt | 4/27/2007 | 2.00 | Discussion with Potential Buyers | Follow-up calls to potential buyers to discuss interest |
| Joe Walter | 4/27/2007 | 2.50 | Discussion with Potential Buyers | Distribution of NDAs and Solicitation Package to interested parties |
| Joe Walter | 4/27/2007 | 0.50 | General Administrative | Update of buyers list to track process |
| Joe Walter | 4/27/2007 | 1.00 | Discussion with Potential Buyers | Coordination of dataroom access |
| Brad Dietz | 4/27/2007 | 1.50 | Client Update | Call with Board to discuss progress |
| Dan Wallitt | 4/30/2007 | 2.00 | Discussion with Potential Buyers | Follow-up calls to potential buyers to discuss interest |
| Joe Walter | 4/30/2007 | 1.50 | Discussion with Potential Buyers | Distribution of NDAs and Solicitation Package to interested parties |
| Joe Walter | 4/30/2007 | 0.50 | General Administrative | Update of buyers list to track process |
| Joe Walter | 4/30/2007 | 1.50 | Discussion with Potential Buyers | Coordination of dataroom access |

| Professional | Hours |
|---|---|
| Brad Dietz | 11.50 |
| Joe Stein | 0.00 |
| Dan Wallitt | 52.00 |
| Joe Walter | 68.00 |
| Stephanie Rose | 0.00 |
| **Total Hours for Month of April 2007** | **131.50** |

| Category | Hours |
|---|---|
| Business Analysis | 10.50 |
| Court Hearing | 0.00 |
| Creditor Update | 0.00 |
| General Administrative | 16.75 |
| Report / Presentation Preparation | 27.75 |
| Discussion with Potential Buyers | 64.50 |
| Testimony Preparation | 0.00 |
| Travel | 0.00 |
| Client Update | 12.00 |



**PETER J**
**SOLOMON**
**COMPANY**

520 Madison Avenue
New York, New York 10022

TEL: 212.508.1600
FAX: 212.508.1633
info@pjsolomon.com

June 18, 2007

M. Fabrikant & Sons, Inc.
One Rockefeller Plaza
New York, NY 10020

Attention:     Michael Shaffet
               Chief Operating Officer
Re:            06-12737-(SMB)

      Pursuant to the Order Establishing Procedures for Interim Monthly Compensation of Professionals (the "Order") entered on January 8, 2007, enclosed please find Peter J. Solomon Company's statement of fees and expenses for the period May 1, 2007 through May 31, 2007 (the "Fee Statement").  The amounts due are set forth on the following page.

      Please contact me if you have any questions.

      Thank you very much for your consideration.

Very truly yours,

Joseph Stein
Managing Director

Enclosure

cc:     Alan Kolod, Esq. (w/Encl.)
        Alicia Leonhard, Esq. (w/Encl.)
        Jeffrey L Schwartz, Esq. (w/Encl.)
        Mitchel H. Perkiel, Esq. (w/Encl.)
        David Feldman, Esq. (w/Encl.)



PETER J
SOLOMON
COMPANY

520 Madison Avenue
New York, New York 10022

TEL: 212.508.1600
FAX: 212.508.1633
info@pjsolomon.com

June 18, 2007

M. Fabrikant & Sons, Inc.
One Rockefeller Plaza
New York, NY 10020

Attention:  Michael Shaffet
            Chief Operating Officer

### R E V I S E D   I N V O I C E

| | | |
|---|---:|---:|
| Advisory fee for the period beginning May 1, 2007 through May 31, 2007 per Engagement Letter dated August 24, 2006, $100,000 per month: | | $100,000.00 |
| Less fee holdback amount, 20% | | 20,000.00 |
| Fee amount due | | 80,000.00 |
| Out-of-pocket expenses for the period May 1, 2007 through May 31, 2007: | | |
| Research | $176.74 | |
| Meetings, late meals, late taxis | 371.10 | |
| Delivery, postage, conference calls and other communications | 284.82 | 832.66 |
| **Total amount due** | | **$  80,832.66** |

*Please remit funds in U.S. dollars by wire transfer to:*

Bank of America
1185 Avenue of the Americas
New York, NY 10036
**ABA # 026 009 593  (for ACH use 021 000 322)**
For further credit to:  **Peter J. Solomon, L.P.**
                        **Account number 94292 62215**

# M. Fabrikant & Sons - Summary of Hours

## Month of May 2007

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Dan Wallitt | 5/1/2007 | 3.00 | Discussion with Potential Buyers | Speak on telephone with potential buyers re: process, requirements and NDAs |
| Joe Walter | 5/1/2007 | 4.00 | Discussion with Potential Buyers | NDA and data room coordination |
| Dan Wallitt | 5/2/2007 | 1.00 | Client Update | Call among financial professionals re: auction status |
| Dan Wallitt | 5/2/2007 | 2.50 | Discussion with Potential Buyers | Speak on telephone with potential buyers re: process, requirements and NDAs |
| Joe Walter | 5/2/2007 | 4.00 | Discussion with Potential Buyers | NDA and data room coordination |
| Dan Wallitt | 5/3/2007 | 2.00 | Discussion with Potential Buyers | Speak on telephone with potential buyers re: process, requirements and NDAs |
| Brad Dietz | 5/3/2007 | 1.00 | Business Analysis | Whitehall note analysis and review - component of Category F lot for auction |
| Joe Walter | 5/3/2007 | 3.00 | Discussion with Potential Buyers | NDA and data room coordination |
| Dan Wallitt | 5/4/2007 | 1.00 | Client Update | Fab Board conference call |
| Dan Wallitt | 5/4/2007 | 4.00 | Discussion with Potential Buyers | Speak on telephone with potential buyers re: process, requirements and NDAs |
| Brad Dietz | 5/4/2007 | 1.00 | Business Analysis | Whitehall note analysis and review - component of Category F lot for auction |
| Brad Dietz | 5/4/2007 | 2.00 | Client Update | Company conference call re: status of auction and process |
| Dan Wallitt | 5/7/2007 | 3.00 | Discussion with Potential Buyers | Speak on telephone with potential buyers re: process, requirements and NDAs |
| Joe Walter | 5/7/2007 | 1.00 | Discussion with Potential Buyers | Speak on telephone with potential buyers re: process, requirements and NDAs |
| Joe Walter | 5/7/2007 | 1.50 | Discussion with Potential Buyers | NDA and data room coordination |
| Dan Wallitt | 5/8/2007 | 0.50 | Client Update | Call among financial professionals re: auction status |
| Dan Wallitt | 5/8/2007 | 4.00 | Discussion with Potential Buyers | Speak on telephone with potential buyers re: process, requirements and NDAs |
| Joe Walter | 5/8/2007 | 0.50 | Client Update | Call among financial professionals re: auction status |
| Joe Walter | 5/8/2007 | 3.00 | Discussion with Potential Buyers | Speak on telephone with potential buyers re: process, requirements and NDAs |
| Brad Dietz | 5/8/2007 | 2.50 | Discussion with Potential Buyers | NDA and data room coordination |
| Brad Dietz | 5/9/2007 | 0.50 | Discussion with Potential Buyers | Bidder notice |
| Dan Wallitt | 5/9/2007 | 3.50 | Discussion with Potential Buyers | Bidder notice |
| Dan Wallitt | 5/9/2007 | 1.00 | General Administrative | Speak on telephone with potential buyers re: process, requirements and NDAs |
| Brad Dietz | 5/10/2007 | 1.00 | Discussions with Potential Buyers | Preparation of First Interim Fee Application |
| Dan Wallitt | 5/11/2007 | 5.00 | Discussion with Potential Buyers | Category F: discussions w/buyer |
| Brad Dietz | 5/11/2007 | 0.50 | General Administrative | Professionals and bidder calls |
| Dan Wallitt | 5/12/2007 | 1.50 | Business Analysis | Preparation of First Interim Fee Application |
| Brad Dietz | 5/12/2007 | 1.00 | Client Update | Review Tara APA |
| Brad Dietz | 5/12/2007 | 1.00 | Business Analysis | Participate in conf call re: Tara proposal |
| Dan Wallitt | 5/14/2007 | 9.00 | Business Analysis | Bid analysis and discussions among professionals |
| Dan Wallitt | 5/15/2007 | 12.00 | Business Analysis | Bid analysis and discussions among professionals |
| Brad Dietz | 5/15/2007 | 10.00 | Business Analysis | Bid analysis and discussions among professionals |
| Dan Wallitt | 5/16/2007 | 3.00 | Discussion with Potential Buyers | Original auction date- review documentation re: bidders |
| Dan Wallitt | 5/16/2007 | 6.00 | Discussion with Potential Buyers | Original auction date- discussions with potential buyers |
| Brad Dietz | 5/16/2007 | 4.00 | Business Analysis | Original auction date- review documentation re: bidders |
| Brad Dietz | 5/16/2007 | 1.00 | Discussion with Potential Buyers | Original auction date- discussions with potential buyers |
| Brad Dietz | 5/16/2007 | 5.00 | General Administrative | Preparation of First Interim Fee Application |
| Joe Walter | 5/17/2007 | 3.00 | Court Hearing | Attend court hearing to resolve issues relating to Qualified Bidders and procedures on go-forward bas |
| Dan Wallitt | 5/17/2007 | 1.00 | General Administrative | Preparation and revision of First Interim Fee Application |
| Brad Dietz | 5/17/2007 | 3.00 | Court Hearing | Attend court hearing to resolve issues relating to Qualified Bidders and procedures on go-forward bas |
| Joe Walter | 5/18/2007 | 4.00 | Court Hearing | Preparation and revision of First Interim Fee Application |
| Dan Wallitt | 5/21/2007 | 4.00 | Court Hearing | Attend auction for lots and whole business at Troutman offices |
| Dan Wallitt | 5/21/2007 | 1.00 | General Administrative | Preparation and revision of First Interim Fee Application |
| Brad Dietz | 5/21/2007 | 4.00 | Court Hearing | Attend auction for lots and whole business at Troutman offices |
| Joe Walter | 5/22/2007 | 3.00 | General Administrative | Preparation and revision of First Interim Fee Application |
| Dan Wallitt | 5/22/2007 | 2.50 | Court Hearing | Attend court hearing to confirm sale |
| Brad Dietz | 5/22/2007 | 2.50 | Court Hearing | Attend court hearing to confirm sale |
| Joe Walter | 5/24/2007 | 3.00 | General Administrative | Preparation and revision of First Interim Fee Application |

# M. Fabrikant & Sons - Summary of Hours

## Month of May 2007

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Dan Wallitt | 5/25/2007 | 0.50 | General Administrative | Preparation and revision of First Interim Fee Application |
| Joe Walter | 5/25/2007 | 1.50 | General Administrative | Preparation and revision of First Interim Fee Application |

| Professional | Hours |
|---|---|
| Brad Dietz | 33.50 |
| Joe Stein | 0.00 |
| Dan Wallitt | 73.00 |
| Joe Walter | 36.00 |
| Stephanie Rose | 0.00 |

| Category | Hours |
|---|---|
| Business Analysis | 41.50 |
| Court Hearing | 19.00 |
| Creditor Update | 0.00 |
| General Administrative | 20.50 |
| Report / Presentation Preparation | 0.00 |
| Discussion with Potential Buyers | 55.50 |
| Testimony Preparation | 0.00 |
| Travel | 0.00 |
| Client Update | 6.00 |

**Total Hours for Month of May 2007**    **142.50**

# EXHIBIT G
## Summary of Fees Due and Received

# Peter J. Solomon Company, L.P.

M. Fabrikant & Sons, Inc.

Summary of Fees, Expenses & Payments Received

For The Period November 24, 2006 Through May 31, 2007

| | Gross Fee Amount | Holdback Amount | Net Fee Amount | Expenses | Payments Received | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Net Fee Amount | Expenses | Total |
| Nov. 24, 2006 through Jan. 23, 2007 | $200,000.00 | $40,000.00 | $160,000.00 | $8,224.43 | $160,000.00 | $8,224.43 | $168,224.43 |
| Jan. 24 - 31, 2007 | 25,806.45 | 5,161.29 | 20,645.16 | 0.00 | 20,645.16 | 0.00 | 20,645.16 |
| February 2007 | 100,000.00 | 20,000.00 | 80,000.00 | 11,601.59 | 80,000.00 | 11,601.59 | 91,601.59 |
| March 2007 | 100,000.00 | 20,000.00 | 80,000.00 | 768.79 | 80,000.00 | 768.79 | 80,768.79 |
| April 2007 | 100,000.00 | 20,000.00 | 80,000.00 | 852.09 | 80,000.00 | (6,080.82) (a) | 73,919.18 |
| Apr. 2007 expense credit | | | | (6,932.91) | | | |
| May 2007 | 100,000.00 | 20,000.00 | 80,000.00 | 832.66 | 80,000.00 | 832.66 | 80,832.66 |
| Sale Transaction Fee | 562,820.00 | 0.00 | 562,820.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | $1,188,626.45 | $125,161.29 | $1,063,465.16 | $15,346.65 | $500,645.16 | $15,346.65 | $515,991.81 |

| | |
| --- | --- |
| Gross Fee amount for the period | $1,188,626.45 |
| Plus expenses for the period | 15,346.65 |
| Total of all payments to be received | 1,203,973.10 |
| Less total payments received-to-date: | 515,991.81 |
| **Balance due PJS Co.** | **$687,981.29** |
| (holdback + Sale Transaction Fee) | |

(a) The credit in the amount of $6,080.82 represents billed expenses incurred prior to retention that can not be reimbursed.

# EXHIBIT H
## Summary of Sale Transaction Fee

# PROJECT PLATINUM

## Sale Transaction Fee Calculation
*($ in Thousands)*

| Sale Price | % Fee | Fee |
|---|---|---|
| $50,000.0 | 2.250% | $1,125.000 |
| $100,000.0 | 2.000% | $2,000.000 |
| | | |
| $51,900.0 | 2.241% | $1,162.820 |
| | | |
| Six-Month Credit | | (600.0) |
| | | |
| **Total Fee** | | **$562.820** |

# EXHIBIT I
## Summary and Itemization of Expenses

# Exhibit I

## Peter J. Solomon, L.P.

### Summary of Out-of-Pocket Expenses

#### *M. Fabrikant & Sons, Inc.*

#### October 15, 2006 - May 31, 2007

| | |
|---|---|
| Travel | $0.00 |
| Taxis | $802.10 |
| Lodging | $0.00 |
| Miscellaneous | $1,485.00 |
| Meals | $3,671.80 |
| Word Processing | $137.50 |
| Duplicating | $9,752.40 |
| Research/Database | $2,481.60 |
| Telephone/Communications | $2,870.94 |
| Courier Services | $20.78 |
| Shipping | $1,057.44 |
| Credit | ($6,932.91) |
| **Total Billable Expenses:** | **$15,346.65** |
| *Total expenses for the period:* | *$15,346.65* |

# Peter J. Solomon, L.P.

## Summary of Out-of-Pocket Expenses

### M. Fabrikant & Sons, Inc.

### October 15, 2006 - January 23, 2007

| | |
|---|---|
| Travel | $0.00 |
| Taxis | $519.60 |
| Lodging | $0.00 |
| Miscellaneous | $960.00 |
| Meals | $2,198.19 |
| Word Processing | $137.50 |
| Duplicating | $1,397.90 |
| Research/Database | $559.46 |
| Telephone/Communications | $2,267.80 |
| Courier Services | $20.78 |
| Shipping | $163.20 |
| **Total Billable Expenses:** | **$8,224.43** |

*Total expenses for the period:* *$8,224.43*

# Peter J. Solomon, L.P.

### Summary of Out-of-Pocket Expenses

### *M. Fabrikant & Sons, Inc.*

### **January 24, 2007 - February 28, 2007**

| | |
|---|---|
| Travel | $0.00 |
| Taxis | $39.00 |
| Lodging | $0.00 |
| Miscellaneous | $525.00 |
| Meals | $730.44 |
| Word Processing | $0.00 |
| Duplicating | $8,354.50 |
| Research/Database | $1,745.40 |
| Telephone/Communications | $166.41 |
| Courier Services | $0.00 |
| Shipping | $40.84 |
| **Total Billable Expenses:** | **$11,601.59** |

*Total expenses for the month:*     *$11,601.59*

# Peter J. Solomon, L.P.

Summary of Out-of-Pocket Expenses

## March-07

| | |
|---|---|
| Travel | $0.00 |
| Taxis | $42.75 |
| Lodging | $0.00 |
| Miscellaneous | $0.00 |
| Meals | $163.18 |
| Word Processing | $0.00 |
| Duplicating | $0.00 |
| Research/Database | $0.00 |
| Telephone/Communications | $212.53 |
| Courier Services | $0.00 |
| Shipping | $350.33 |
| **Total Billable Expenses:** | **$768.79** |

*Total expenses for the month:*     *$768.79*

# Peter J. Solomon, L.P.

### Summary of Out-of-Pocket Expenses

## M. Fabrikant & Sons, Inc.

### April-07

| | |
|---|---|
| Travel | $0.00 |
| Taxis | $112.00 |
| Lodging | $0.00 |
| Miscellaneous | $0.00 |
| Meals | $297.64 |
| Word Processing | $0.00 |
| Duplicating | $0.00 |
| Research/Database | $0.00 |
| Telephone/Communications | $132.58 |
| Courier Services | $0.00 |
| Shipping | $309.87 |
| Credit | ($6,932.91) |
| **Total Billable Expenses:** | **($6,080.82)** |

*Total expenses for the month:*     *($6,080.82)*

# Peter J. Solomon, L.P.

### Summary of Out-of-Pocket Expenses

### *M. Fabrikant & Sons, Inc.*

#### May-07

| | |
|---|---|
| Travel | $0.00 |
| Taxis | $88.75 |
| Lodging | $0.00 |
| Miscellaneous | $0.00 |
| Meals | $282.35 |
| Word Processing | $0.00 |
| Duplicating | $0.00 |
| Research/Database | $176.74 |
| Telephone/Communications | $91.62 |
| Courier Services | $0.00 |
| Shipping | $193.20 |

**Total Billable Expenses:** **$832.66**

*Total expenses for the month:* *$832.66*

# EXHIBIT J
## Final Employment Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
In re                                     :    Chapter 11
                                          :
M. FABRIKANT & SONS, INC. and             :    Case No. 06-12737-(SMB)
FABRIKANT – LEER INTERNATIONAL, LTD.      :
                Debtors.                  :
                                          :    (Jointly Administered)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### FINAL ORDER PURSUANT TO SECTION 327(a) OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 2014(a) AND LOCAL BANKRUPTCY RULE 2014-1, AUTHORIZING THE DEBTORS' RETENTION AND EMPLOYMENT OF PETER J. SOLOMON COMPANY, NUNC PRO TUNC, AS OF THE PETITION DATE

This matter coming before the Court on the application of debtors and debtors in possession Pursuant to Sections 327(a) of title 11, United States Code, (the "Bankruptcy Code"), rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 2014-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules") Authorizing the Debtors' Retention and Employment of Peter J. Solomon Company ("PJSC"), Nunc Pro Tunc, as of the Petition Date [Doc. No. 17] (the "Application"),[1] filed by the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"); the Court having reviewed the Application, the Affidavit of Joseph C. Stein, III in support thereof and having considered the statements of counsel and the evidence adduced with respect to the Application at a hearing before the Court on December 6, 2006 (the "Hearing"); and the Court having entered an order, subsequent to the Hearing, granting the relief requested in the Application on an interim basis to the extent set forth therein (the "Interim

NEWYORK01 1155815v5 041080-000006
NEWYORK01 1189661v2 041080-000001
NEWYORK01 1190433v1 041080-000001
NEWYORK01 1189661v3 041080-000001

Order"); and the Court having entered a second interim order, dated February 21, 2007, granting

the relief requested in the Application (the "Second Interim Order") and the Court having found

that: (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (c)

this is a core proceeding pursuant to 28 U.S.C. § 157(b); (b) the employment of PJSC is

necessary and would be in the best interests of the Debtors, their creditors and estates; (c) notice

of the Application, the Hearing and the Interim Order and the Second Interim Order was

sufficient under the circumstances; (d) in light of the circumstances, the requirements of Local

Bankruptcy Rule 9013-1(b) that a separate memorandum of law be filed in support of the

Application is waived; (e) PJSC does not hold or represent any interest adverse to the Debtors'

estates and is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code and

as required by section 327 of the Bankruptcy Code; and (f) the Application, the Interim Order

and all related papers fully comply with the Bankruptcy Code, Bankruptcy Rules and the Local

Bankruptcy Rules; and the Court having determined that the legal and factual bases set forth in

the Motion, the Affidavit, and at the Hearing establish just cause for the relief granted herein;

   **IT IS HEREBY ORDERED**, that the Motion is hereby GRANTED; and it is further

   **ORDERED**, that the Debtors are authorized to retain and employ PJSC as their financial

advisors in connection with their chapter 11 cases, pursuant to section 327(a) of the Bankruptcy

Code and Bankruptcy Rule 2014(a), on the terms and conditions[2] set forth in the Motion, the

Revised Engagement Letter, and this Order, nunc pro tunc as of the Petition Date; and it is

further

---

[1]   Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.
[2]   A summary of the terms of PJSC's retention is annexed hereto as Schedule 1.

NEWYORK01 1155815v5 041080-000006
NEWYORK01 1189661v2 041080-000001
NEWYORK01 1190433v1 041080-000001
NEWYORK01 1189661v3 041080-000001

**ORDERED**, that PJSC shall be compensated for its services and reimbursed for any of its expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the Engagement Letter,[3] and any other applicable orders or procedures of this Court, and PJSC shall disclose in its monthly invoices and fee applications a description of the nature of post-petition services performed for, and the amount of any compensation sought and received from, any of the Debtors; and it is further

**ORDERED**, that PJSC shall keep time records of services rendered in these chapter 11 cases in one-half hour increments; and it is further

**ORDERED**, that the Debtors' senior secured debtholders (collectively, the "<u>Lenders</u>"), and the Official Committee of Unsecured Creditors shall retain the right to object to PJSC's interim and final fee applications (including expense reimbursement) solely to the following extent: (i) with respect to PJSC's monthly advisory fees, on the ground of "improvidence" as provided in section 328(a) of the Bankruptcy Code, (ii) with respect to PJSC's reimbursement of out-of-pocket expenses, on the grounds of "actual and necessary" as provided in section 330(a)(1)(A) of the Bankruptcy Code, and (iii) with respect to PJSC's commission-based "success" fee, on the grounds provided for in section 330(a) of the Bankruptcy Code; <u>provided, however</u>, that in the event of the sale of substantially all of the Debtors' assets in a sale conducted pursuant to Section 363 of the Bankruptcy Code wherein substantially all the Debtors' assets are acquired by the Lenders utilizing a "credit bid" at the pre-established "Reserve Prices", PJSC shall not be entitled there against to receive a commission-based "success" fee; and it is further

---

[3]  Annexed to the Motion as Exhibit A.

NEWYORK01 1155815v5 041080-000006
NEWYORK01 1189661v2 041080-000001
NEWYORK01 1190433v1 041080-000001
NEWYORK01 1189661v3 041080-000001

**ORDERED**, that notwithstanding the above, the United States Trustee retains all rights to object to PJSC's fees and expenses on all grounds including the reasonableness standard set forth in section 330 of the Bankruptcy Code; and it is further

**ORDERED**, that all requests of PJSC for payment of indemnity pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, provided however, that in no event shall PJSC be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct; and it is further

**ORDERED**, that in the event PJSC seeks reimbursement of attorneys' fees from the Debtors, to the extent that the Engagement Letter provides for same, the invoices and time records from such attorneys shall be included in PJSC's applications (both interim and final) and such invoices and time records shall be subject to the United States Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of §§ 330 and 331 of the Bankruptcy Code; and it is further

**ORDERED**, that notwithstanding the Engagement Letter, PJSC's retention shall terminate and expire on June 15, 2007, without cause; and it is further

**ORDERED**, that to the extent this Order is inconsistent with the Engagement Letter, this Order shall govern.


Dated: New York, New York
     May 24, 2007

                            **/s/  STUART M. BERNSTEIN**
                            HONORABLE STUART M. BERNSTEIN
                            UNITED STATES BANKRUPTCY JUDGE


No Objection
United States Trustee

By: Alicia M. Leonhard
Trial Attorney
Office of the United States Trustee

## SCHEDULE 1

## NOTICE TO CREDITORS OF TERMS OF PETER J. SOLOMON COMPANY'S RETENTION[1]

Provision of Services

(a)     PJSC will familiarize itself to the extent it deems appropriate and feasible with the business, operations, properties, financial condition and prospects of the Company,[2] and, to the extent relevant, any prospective Buyer, it being understood that PJSC shall, in the course of such familiarization, rely entirely upon such information as may be supplied by the Company or other relevant parties, including such Buyer and the Company's counsel, without assuming any responsibility for independent investigation or verification thereof;

(b)     PJSC will assist the Company in the preparation of descriptive information concerning the Company, based upon information provided by the Company, the reasonableness, accuracy and completeness of which information PJSC will not be required to investigate and about which PJSC will express no opinion;

(c)     PJSC will review and analyze the business plans and financial projections prepared by the Company;

(d)     PJSC will evaluate the Company's liquidity needs, potential debt capacity and capitalization based on the Company's projected earnings and cash flows;

(e)     PJSC will assist the Company with developing various financial models and projections to be used in conjunction with a Transaction;

(f)     PJSC will assist the Company with developing and presenting various reporting and informational requirements as may be required from time to time by its Senior Bank Debt holders;

(g)     PJSC will advise and assist the Company in identifying and contacting potential Transaction sponsors;

(h)     PJSC will assist the Company in conducting presentations and due diligence meetings with prospective Transaction sponsors;

(i)     PJSC will advise and assist the Company in developing a general strategy for accomplishing a Transaction, as well as its form and structure;

---

[1]     The foregoing is intended only as a summary and under no circumstances should be considered a substitute for the terms set forth in the Engagement Letter and any attachments thereto.

[2]     All capitalized terms as they relate to PJSC's duties and functions have the meanings ascribed to them in the Engagement Letter.

(j)     PJSC will periodically advise the Company as to the status of dealings with any parties involved in a Transaction and will advise and assist the Company in the course of its negotiations, execution and closing of any Transaction;

(k)     PJSC will advise and assist management of the Company in making presentations to the Company's Board of Directors concerning general strategy and any proposed Transaction;

(l)     PJSC will participate as an advisor to the Company in negotiating and implementing a Transaction;

(m)     PJSC will render such other financial advisory services as may from time to time be agreed upon by PJSC and the Company.

Compensation
a)     PJSC will receive a $100,000 monthly advisory fee;

b)     PJSC will receive reimbursement of all reasonable and actual out of pocket expenses;

c)     PJSC will receive a commission-based fee in these chapter 11 cases under any one of the following scenarios:

    i.  A Restructuring Fee of $1.5 million if the Company restructures its existing bank and trade debts as part of a Plan or Reorganization

    ii. A Financing Transaction Fee of between 1.0% – 5.0% capital raised if PJSC assists the Debtors in raising new debt or equity capital

    iii. A Sale Fee based on a percentage of consideration for the sale of a substantial portion of the Debtors' assets or interests, with a minimum Sale Fee of $1.0 million

Indemnities

a)     The Debtors shall indemnify and hold PJSC harmless from and against any of the following: losses, claims or proceedings including stock holder or creditor actions, damages, judgments, assessments, investigation costs, settlement costs, fines, penalties, arbitration awards, other liabilities, costs, fees and expenses related to or arising out of oral or written information provided by the Debtors, its employees or other agents, or arising out of any action by PJSC in connection with the Engagement Letter.  However, the foregoing shall not apply if it is determined by a court of competent jurisdiction that such indemnities came into being as a sole result of the gross negligence or bad faith of PJSC.  The Debtors shall further reimburse PJSC, or at the Indemnified Party's option advance amounts sufficient to cover, any legal or other fees or expenses as they are incurred.  The Debtors also agree that PJSC shall not have any liability (whether direct or indirect, in contract or tort or otherwise) to

the Debtors for or in connection with advice or services rendered or to be rendered by PJSC pursuant to this agreement, the transactions contemplated hereby or any of PJSC's actions or inactions in connection with any such advice, services or transactions except for losses of the Debtors that are finally judicially determined by a court of competent jurisdiction to have arisen solely out of the gross negligence or bad faith of PJSC in connection with any such advice, actions, inactions or services.